The State vs. Nicholas Staub, Comptroller.

Hartford Dist., March T., 1892. Andrews, C. J., Carpenter, Seymour, Torrance and Fenn, Js.

By an act passed in 1854 (now Gen. Statutes, § 2228,) the comptroller is directed, at a certain time annually, to pay to the several towns for school purposes one dollar and fifty cents for each child of school age. In 1877 an act was passed providing for specific appropriations for all state expenditures, and by another, passed in 1884, (now Gen. Statutes, §§ 379–384 and 403–410,) a thorough system of estimates and appropriations was established, the latter act forbidding any disbursing officer of the state to allow or pay any account or claim until a special appropriation should have been made for it. The General Assembly of 1891 made no appropriation to meet any expenses of the state, and that made by the next preceding legislature was exhausted at the end of the fiscal term provided for. Upon a writ of mandamus to compel the comptroller to distribute the school money to the towns, it was held—

1. That in the absence of specific appropriations the prohibition contained in the act of 1884 became inoperative.

2. That the standing act directing the distribution of the school money by the comptroller became the sole law of the matter.

In the absence of a special appropriation, the general law requiring money to be paid is itself an appropriation for that purpose.

The intentional omission by the General Assembly to pass any appropria-

State v. Staub.

tion bills may be regarded as operating, and as intended to operate, as an implied suspension of the prohibitions contained in the act.

The state constitution (art. 4, § 19) provides that the comptroller shall "audit and settle all public accounts except grants and orders of the General Assembly." While the comptroller may exercise his discretion in the settlement of an unliquidated claim, yet where the law fixes definitely the amount of a claim, the time and manner of its payment and the person to whom it is to be paid, he has no duty to perform on its presentation but to draw his order in payment of it. The act which the comptroller is to perform is a purely ministerial one.

Whenever any public officer, however humble, is entrusted with power in the exercise of which he may use discretion, he cannot be controlled in respect to such exercise by mandamus. And whenever any public officer, however high, is commanded by the constitution or by any statute to perform a ministerial act, the performance may be compelled by mandamus.

[Argued March 2d—decided March 17th, 1892.]

MANDAMUS; brought to the Superior Court in Hartford County. The application was made by the state's attorney for the county, and averred as follows:—

1. That Nicholas Staub was duly elected comptroller at the general election held in November, 1890, and duly qualified and entered upon the duties of that office, and is now and for more than one year last past has been comptroller.

2. That section 2228 of the General Statutes provides that the comptroller shall annually, as soon as may be after February 28th, distribute among the several towns one dollar and fifty cents for every person within such town of school age, as ascertained from the returns required, and transmit the amount distributed to each town to its treasurer, on the application of the school visitors.

3. That sections 306, 405 and 407 of the General Statutes prescribe the manner and impose the limitations as to drawing and paying money from the state treasury, and that no specific appropriation for the payment of the money mentioned in section 2228 during the two fiscal years commencing July 1st, 1891, has been made, in accordance with the terms mentioned in section 306, and the January, 1891, session of the General Assembly has not yet adjourned.

4. That it is now, and since February 28th, 1892, has been,

the duty of said Staub, comptroller, to distribute the money mentioned in said section 2228 among the several towns, as provided in said section, and to draw his order on the treasurer for the amount distributed to each town in favor of its treasurer, on application of its school visitors.

5. That on the 29th day of February demand was made upon said Staub, comptroller, to distribute said money, and to transmit the amount distributed to each town, as required by the provisions of section 2228; and said Staub, comptroller, then refused to distribute said money, and to transmit the amount payable, as required by said section, and refused to enter upon the performance of the duties imposed on the comptroller by section 2228, until the General Assembly should pass an act making a special appropriation for the payment of said money or take other action in the premises.

Wherefore, the said attorney moves this honorable court to issue a writ of mandamus, requiring and enjoining said Nicholas Staub, comptroller, to forthwith distribute among the several towns one dollar and fifty cents for every person between four and sixteen years of age belonging to any school district, ascertained from the last returns of the school visitors, in proportion to the number of persons in each between the ages of four and sixteen years ascertained from said returns, and to transmit the amount distributed to each town to its treasurer, on the application of its school visitors or of its school committee, upon receipt from its school visitors or committee of the certificate required by law; or to signify cause to the contrary thereof to this court.

An alternative writ of mandamus was issued by the court, and the defendant filed a motion to quash it, stating the following grounds:—

1. The official action which said writ requires him to perform is included in and is the exercise of the powers and duties vested in and imposed upon him as an independent officer of the executive department by the constitution, and the exercise of such powers and the performance of such duties cannot lawfully be enforced by writ of mandamus.

2. The statutes mentioned in said writ, and the law of the state, do not require him to perform the official acts enjoined by said writ.

The questions arising on this motion were reserved for the advice of this court.

*D. Loomis* and *W. Hamersley*, in support of the motion.

1. Mandamus will not lie to a chief executive officer for the purpose of. controlling his discretion in the exercise of powers which are conferred and defined by the constitution. The constitution of Connecticut confers such executive power on the comptroller. The power so conferred by the constitution makes the duty of passing an official judgment upon every payment from the state treasury, not directed by the General Assembly by means of a special grant to some individual or a special order upon the treasurer. This official judgment cannot be controlled by mandamus without transferring to the judiciary the power vested in the executive department and infringing the principle which makes each department independent of the other in the exercise of its constitutional duties. This duty of the comptroller deals only with the payment of state money in satisfaction of demands against the state. The authorizing of such payments is purely a legislative power. The administration of such payments is purely an executive power. The judicial department has no power to determine or enforce a demand against the state. When the constitution vested in the executive the power of passing judgment upon a payment, it vested in the legislature the power of reversing that judgment. There is no appeal in such case from the executive to the judicial department unless in pursuance of special legislation. Section 2228 of the General Statutes, in connection with other sections, requires the comptroller to exercise his official judgment whether certain payments to the several towns can be now lawfully made. This is the exercise of official discretion in the performance of an executive act within the range of powers conferred by the constitution, and is not to be directed by mandamus. *Kendall* v.

*U. States,* 12 Pet., 524; *U. States* v. *Guthrie,* 17 How., 284; *U. States* v. *Black,* 128 U. S. R., 40, 48; *Mc Cauley* v. *Brooks,* 16 Cal., 11; *Thomas* v. *Owens,* 4 Md., 89; *Green* v. *Purnell,* 12 id., 329; *Dewey* v. *State Auditors,* 32 Mich., 191; *Ayers* v. *State Auditors,* 42 id., 422; *Tuttle* v. *Bradin,* 41 N. W. Rep., 817; *La Chance* v. *Auditor Gen.,* 43 id., 1005; *Rice* v. *Austen,* 19 Minn., 103; *County Treasurer* v. *Dike,* 20 id., 363; *Western R. R. Co.* v. *De Graff,* 27 id., 1; *State* v. *Whitcomb,* 28 id., 50.

2. The prohibitions contained in sections 306, 405 and 408 of the General Statutes modify every general law authorizing state expenditures. No payment from the state treasury can be made or ordered for expenditures authorized by general law, unless a special act is passed appropriating a specific sum for such expenditures, excepting, and excepting only, such expenses as are clearly necessary to the maintenance of essential operations of the state government. The payment to the several towns of the money mentioned in section 2228 is in the nature of a gift. The expenditure is for an operation of the town government, which the law requires the town to provide for in any event, which must be administered by town officers and paid for by money raised through local taxation. Such payment cannot be said to be clearly necessary to the maintenance of the essential operations of the state government. That section provides that the comptroller shall annually, as soon as may be after February 28th, distribute among the several towns one dollar and fifty cents for every person in such town of school age as ascertained from the returns required, and transmit the amount distributed to each town to its treasurer on the application of its school visitors. Upon complying with the conditions of the statute, each town has a claim, in case special appropriation is made, against the state for the payment of the sum mentioned in the statute. But the statute also says, no accounting or disbursing officer and no department of the government shall allow or pay any account or charge growing out of or in any way connected with any regular department of the government, until special appro-

priation shall have been made by law to pay such account or charge. No department of the state government and no officer of the same shall expend in any fiscal year or years any sum in excess of appropriations made by the General Assembly for such year or years. Every order on the state treasurer shall specify the particular appropriation against which the same is drawn, and no money shall be paid by the treasurer unless the order contains such specification. No money (other than for the public debt) shall be paid or drawn out of the treasury unless such money is paid or drawn for a specific appropriation made in accordance with the terms of the statute. These positive provisions of law must be held to be a part of every section of the General Statutes authorizing the expenditure of state money, and to forbid the payment of money for expenditures so authorized without special appropriation for that purpose, except, and except only, when the expense is "necessary to the essential operations of the state government." The only question therefore is, whether the payment of this money to the several towns is an expense necessary to the maintenance of the essential operations of the state government. While every act to be performed by a public officer is an operation of government, yet there is a broad distinction between the operations of the state government and the operations of town and various local governments. The former are carried on through state officers at the expense of the state treasury, and the latter through local officers and by means of local taxation. In the case of towns some essential operations are secured to the towns independent of state interference. While the state may and frequently does appropriate money in aid of local government, such aid does not alter the character of the local government nor make the subject of such aid a part of the state machinery, any more than similar appropriations in aid of private corporations that may be rendering services beneficial to the public, incorporate such corporations into the system of state government. The state has always imposed upon parents the duty of educating their children and made the violation of

State v. Staub.

that duty an offense.' It has always imposed upon local corporations the duty, and invested them with the power, of maintaining common schools. This duty was imposed first upon ecclesiastical societies, then upon school societies, and now is imposed upon towns. In 1854 the laying a tax by each town for the support of common schools was made compulsory. In 1856, the property, powers and duties of school societies were transferred to the towns, and by law the obligation of maintaining common schools and the right of management and power of taxation for that purpose, belong to the towns and their subdivisions, the school districts. The present law authorizing an annual appropriation in aid of towns was passed in 1871. It is not an appropriation for carrying on common schools, any more than an appropriation in aid of a private hospital is an appropriation for carrying on such hospital. The legal duty and power of the towns to maintain common schools remains precisely the same, whether an annual gift from the state treasury be made to the towns or not. Under these circumstances it seems clear that the carrying on of the common schools is not distinctively an operation of the state government, and that the payment of the gift authorized by section 2228 is not the payment of an expense "necessary to the maintenance of the essential operations of the state government;" and therefore the general appropriation authorized by that section is modified by the sections which forbid its payment until a special appropriation is made for that purpose.

*A. F. Eggleston,* State's Attorney, and *C. J. Cole, contra.*

ANDREWS, C. J. The respondent is the comptroller of public accounts. Upon the application of the state's attorney the Superior Court for Hartford County issued an alternative writ of mandamus, commanding him forthwith to distribute among the several towns of the state the money which by section 2228 of the General Statutes it is provided that the comptroller shall distribute, namely, one dollar and fifty cents for every person within such town of school age

as ascertained from the returns required, and to transmit the amount distributed to each town to its treasurer, etc., etc.

The respondent appeared in the Superior Court and moved to quash the alternative writ, because :—"1. The official action which said writ requires him to perform is included in and is the exercise of the powers and duties vested in and imposed upon him as an independent officer of the executive department by the constitution, and the exercise of such powers and the performance of such duties cannot lawfully be enforced by writ of mandamus.—2. The statutes mentioned in said writ and the law of the state do not require him to perform the official acts enjoined by said writ."

If the matter alleged in the second ground is sufficient, an examination of the first ground will be unnecessary. It will be convenient therefore to consider that one first.

Section 2228 of the General Statutes is as follows:— " The income of the school fund which, after deducting all expenses attending its management, shall remain in the treasury on the twenty-eighth day of February in each year, and also one dollar and fifty cents for every person between four and sixteen years of age belonging to any school district, as ascertained from the last returns of the school visitors, shall annually, as soon as may be after said day, be divided and distributed by the comptroller among the several towns in proportion to the number of persons in each between the ages of four and sixteen years as ascertained from said returns, and he shall transmit the amount distributed to each town to its treasurer on the application of its school visitors, or of its school committee if such town constitute but one school district; but no money shall be transmitted to any town until the comptroller shall have received from its school visitors or committee a certificate, signed by them or their chairman and secretary, and substantially in the following form, * * *."

This section has been in force in very nearly the words in which it now appears since the year 1854, and there is no dispute but that the respondent has received from the sev-

eral towns of the state the returns and certificates required thereby.

In 1877 the legislature passed an act (Acts of 1877, ch. 120,) providing for specific appropriations for all purposes authorized by law. This act is now sections 377 and 378 of the General Statutes of 1888, which are as follows;—"Section 377. The General Assembly in behalf of the state. the representatives of the towns, and the senators residen in the several counties in behalf of their respective cou/ ties, every city by its common council, when so authorized by its charter or by the freemen in legal meeting assembled, and every town, borough or school district by legal meeting of its qualified voters, may make appropriations of specific sums of money for any purpose authorized by law, and by the warnings of the meetings at which the appropriations are made. Section 378. Whenever any specific appropriation of money may have been made by the General Assembly, by the representatives and senators of any county, or by any community or corporation named in the preceding section, every agent, commissioner or executive officer of the state, or of any county, city, borough, town or school district, who shall willfully authorize or contract for the expenditure of any money or the creation of any debt for any purpose in excess of the amount specifically appropriated for such purpose by the General Assembly, the county representatives and senators, or the community or corporation of which he is the agent, commissioner or executive officer, unless such expenditure shall be made or debt contracted for the necessary repair of roads or bridges or the necessary support of schools or paupers in cases arising after the proper appropriation has been exhausted, shall be fined not exceeding one thousand dollars or imprisoned in the county jail not exceeding one year, or both."

The plan of specific appropriations for state expenditures was greatly enlarged in the year 1884, (Acts of 1884, ch. 108,) and a method of procedure for making estimates and passing appropriation bills was carefully elaborated. Most of the provisions of this later act appear now in the General

Statutes of 1888, sections 379–384 inclusive, and sections 403–410 inclusive.

Section 407 is as follows:—"No department of the state government, no officer of the same, and no officer of any public institution, shall expend in any fiscal year or years any sum in excess of appropriations made by the General Assembly for such year or years, or involve the state in any contract for the future payment of money in excess of any such appropriation. Nor shall any accounting or disbursing officer of any department of the government allow or pay any account or charge whatever, growing out of or in any way connected with any regular department of the government, or with any special or other commission, until special appropriation shall have been made by law to pay such accounts and charges, or after the special appropriation has been exhausted; and no money appropriated for contingent, incidental or miscellaneous purposes shall be expended or paid for official or clerical compensation."

The General Assembly at its session in January, 1889, made specific appropriations for the purposes mentioned in section 2228 for the two years ending June 30th, 1891. But the General Assembly of 1891 has made no appropriation for said expenses or for any other expenses of the state.

In this condition of things is the respondent forbidden to distribute the money according to the command of the alternative writ? In other words, in the absence of any specific appropriation by the General Assembly is the prohibition contained in the act operative or inoperative?

Upon this part of the case the eminent counsel for the state have furnished us with an argument so clear and decisive that we have felt impelled to use portions of it, making only slight changes.

If the latter of these provisions, (that is, the special appropriation act,) is binding under existing circumstances, then the law is the equivalent of a law providing that for an indefinite period the officers charged with the maintenance of the state government shall not perform the duties imposed on them by law; courts shall not be held; persons

charged with crime shall be refused a trial; prisoners in the state prison shall be released or starved; the property of the state shall be abandoned, uncared for and unprotected. Such a law is obnoxious to certain plain provisions of the constitution, as well as to a fundamental principle underlying all government. It would seem to be beyond the power of the legislature to pass. But can it be that the legislature can do indirectly what it is forbidden to do directly? Is the default of the General Assembly more potent than its action? The last section of the act of 1884 incorporated into section 384 of the General Statutes seems intended to prevent such an anomaly. It is as follows:—

"Nothing contained in this act shall be construed to affect or impair the duties now imposed by law upon the comptroller and treasurer in auditing and paying accounts made or presented against the state, except so far as herein mentioned."

The act on its face is not applicable to a condition of affairs where no special appropriations whatever are or can be made; certainly no mention is made in the act affecting under such circumstances the duties imposed by law on the treasurer and comptroller. It must be remembered that under our system, unlike that of many states, no special appropriations are required; the authorizing and expenditure is in itself an appropriation of money for that purpose; for the mere purpose of authorizing the application of state funds to the payment of authorized expenditures, a special appropriation is a work of supererogation. In the absence of a special appropriation the existence of a law requiring an expenditure to be incurred is an appropriation of money for that purpose, and the law imposes on the comptroller the duty of settling and adjusting demands against the state for such expenses. It may therefore fairly be urged that this section was intended to, and does, provide that nothing in the special appropriation act shall be construed as impairing or affecting the duties imposed by law upon the comptroller and treasurer in auditing and paying accounts made or presented against the state in a fiscal year for which no special

appropriations are made. But assuming that this section has no such application, the question remains as to the effect and meaning of these provisions of the special appropriation act when the legislature makes no special appropriation for a fiscal year. Their effect and meaning must be determined in connection with other provisions in the same act and with the provisions of other laws contained in the same General Statutes.

The special appropriation act must be considered as a whole; the provisions prohibiting the drawing of any money from the treasury for the payment of demands authorized by law, must be construed in connection with other provisions of the act which alone make the prohibitory provisions reasonable or valid. This whole act is based upon the making of special appropriations by the legislature. Its main object was to induce each future legislature to make special appropriations. For this purpose it commanded the state officers to prepare the necessary estimates to be laid before each General Assembly at the opening of its session; it commanded the legislature to refer these estimates to a joint committee, and to refer all bills and resolutions appropriating money to the same committee; it prescribed the form and title of appropriate bills, and assumed the passage of such bills before the first of June; and so the provisions prohibiting the comptroller from exercising the duties imposed upon him by the constitution and laws in adjusting and settling demands against the state and drawing orders on the treasurer for their payment, are based upon the mandatory provisions requiring each General Assembly to pass appropriation bills for the succeeding fiscal years. If the mandatory provisions are not obeyed, the prohibitory provisions become unreasonable, if not void. It seems to follow that the legislature could not have intended the prohibitory provisions to be binding unless the mandatory provisions on which they were based should be obeyed. This conclusion is strengthened by the fact that the mandatory provisions are not binding. No legislature can bind a succeeding legislature as to what laws it shall

pass; and the failure to obey such mandate is not a neglect of duty on the part of the succeeding legislature. We must therefore impute to the legislature which passed the special appropriation act, either the intent to prevent the carrying on of the state government in case any future legislature or either branch of such legislature should exercise its unquestionable right of refusing to pass laws it might deem unadvisable, or the intention to limit the application of the prohibitory provisions to the years when appropriation acts should be in force.

The former intention is inconsistent with the main purpose of the act and with many other laws, if not with the constitution itself; the latter intention is consistent with the whole theory of the act. In other words, the act may be construed as if the prohibitory clauses had stated in express language that the passage of the appropriation bills as required by each legislature should be a condition precedent to their unqualified operation. In the construction of a statute affecting the maintenance of necessary functions of government, the plain purpose of the law as expressed in its structure and through all its provisions should prevail against the omission to state formally, or the failure to state with verbal accuracy, a limitation clearly implied and essential to the reasonableness or validity of the act.

Unless the prohibitory provisions are dependent for their full operation on the passage of special appropriation bills, then they are in direct conflict with other statutes.

Divers laws impose, by imperative command, on executive, administrative and judicial officers, duties essential to the preservation of order, the administration of justice, and the protection of property. Many of these duties are not imposed by statute, but their performance is demanded by the constitution and is of necessity involved in the existence of a government. The legislature has authorized the expenditure of money necessary for the performance of these duties, and has raised by taxation sufficient funds now in the state treasury to meet these expenses.

The constitution and laws command the comptroller to

adjust and settle all demands against the state on account of such expenses, and to draw his order on the treasurer for their payment.

The special appropriation act (if we construe strictly the language of a single clause, without reference to other provisions and laws,) says:—"No moneys shall be drawn out of the treasury for the payment of such expenses." Here is a direct conflict of law. One law says to the comptroller:—"You shall settle all demands against the state for the expense of carrying on its government." The other law says:—"You shall draw no order upon the treasurer." Obedience to one law involves a violation of the other. Acting is unlawful. Refusing to act is unlawful. If this is the real condition, if the conflicting laws cannot be reconciled by a reasonable construction, then the paramount law must control. One law cannot be said to repeal the other, for both were passed at the same time; both are contained in the General Statutes and took effect at the same moment. The paramount must control. The command to provide for the essential operations of government must prevail against a rule of procedure in applying the funds raised by taxation for the support of the government.

Thus far I have followed substantially the brief of the counsel for the state. If notwithstanding what has been so well said there should be some lingering suspicion that the prohibitory parts of the act under consideration were still in force, there is another view which is wholly conclusive. The omission by the General Assembly to pass any special appropriations has been so long continued that it must be regarded as intentional. The General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them. And it is always presumed to have intended that effect which its action or non-action produces. The neglect of the Assembly of 1891 to observe the mandatory provisions of the special appropriation act may be construed in one of two ways. It may be held to be equivalent to an affirmative enactment suspending the prohibitory parts of

the act, or it may be construed as a design by the General Assembly to prevent the carrying on of the state government. The latter is something altogether too extravagant to be admitted. We think the former is the proper meaning; and that the omission by the General Assembly to pass any appropriation bills, being intentional, operates, and was intended to operate, as a legislative construction that all the prohibitions contained in the act were suspended.

We conclude therefore that there is nothing in the special appropriations act to prevent the respondent from obeying the command of the alternative writ.

The first ground upon which the motion to quash is urged may be read as though it intended to assert that the respondent cannot be controlled by mandamus, for the reason that he derives his powers from the constitution rather than from the statutes. Or it may be read as though it intended to assert no more than that he performs executive duties only, in the exercise of which he must, or may, use discretion, and that for that reason he cannot be controlled by mandamus. If the latter is intended the court agrees with it. If the former, then the court cannot assent to it. It is the nature of the thing to be done by which the propriety or impropriety of issuing a mandamus is to be determined, and not the office of the person to whom the writ is directed, nor the source from which he derives his power. Subject possibly to some exception, we think the law to be this—that whenever any public officer, however humble, is entrusted with power in the exercise of which he may use discretion, in respect to such exercise he cannot be controlled by mandamus; and that whenever any public officer, however high, is commanded by the constitution or by any statute to perform a ministerial act, the performance of such act may be compelled by a mandamus. High on Extraordinary Remedies, §§ 24–34.

If then the act which the respondent is required to perform is a ministerial one, the motion to quash should be denied. And this is to be determined by the character of the act itself.

"A ministerial duty, the performance of which may in proper cases be required of the head of a department by judicial process, is one in respect to which nothing is left to discretion. It is a simple definite duty arising under conditions admitted or proved to exist, and imposed by law." Ch. J. CHASE, in *State of Mississippi* v. *Johnson*, 4 Wall., 498. "A ministerial act is one which a person performs in a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his judgment upon the propriety of the act being done." *Casualty Ins. Co.* v. *Fyler*, 60 Conn., 448.

The duty of the comptroller is to "adjust and settle all public accounts and demands, except grants and orders of the General Assembly." Section 19, art. 4 of the constitution. The meaning of the terms "adjust and settle," can be understood better if we bear in mind that some accounts and demands are liquidated and that others are unliquidated. A liquidated account is one the amount of which is agreed upon by the parties or is fixed by operation of law. *Hargroves* v. *Cooke*, 15 Georgia, 321; *Bull* v. *Bull*, 43 Conn., 469; *Warren* v. *Skinner*, 20 Conn., 562. The word "settle," when applied to a liquidated account or demand, means to pay it. *Pinkerton* v. *Bailey*, 8 Wend., 600; *Stillwell* v. *Coope*, 4 Denio, 225. The word "adjust," when used in reference to a liquidated claim, has the same meaning, though perhaps not quite so clearly. The word "settle" when applied to an unliquidated claim or demand, means its mutual adjustment between the parties and an agreement upon the balance. This is said to be its established legal meaning. *Baxter* v. *The State*, 9 Wisconsin, 38–44. In reference to an unliquidated demand the word "adjust" means "to determine what is due; to settle; to ascertain; as to adjust a claim, a demand, or a right." Anderson's Law Dictionary.

If the words "adjust and settle" are used in this section of the constitution in that sense alone which they must bear when applied to liquidated claims, then the comptroller has nothing to do but to pay accounts and demands. We do not,

however, understand this to be the meaning in which these words are there used. This section doubtless has reference to unliquidated claims and demands as well as to those which are liquidated. And the duty which the comptroller is to perform in the case of unliquidated claims is to determine what is due, and in the case of liquidated claims it is an entirely different one.

We have no occasion to discuss unliquidated claims. It may well be that as to such claims the comptroller exercises a discretion. But when a claim is liquidated in the sense that its amount is fixed by operation of law, it is difficult to see how the comptroller can use any discretion in respect to it. When the law fixes definitely the amount of any claim, and also fixes the time and manner of its payment and the person to whom it is due, and the claim is presented to the comptroller by that person and at that time, he has in respect to it "no discretion to exercise, no judgment to use, and no duty to perform," but to draw his order in payment of it. The duty to draw the order then falls exactly within the definition of a ministerial duty or act as given above.

But the present case does not necessarily turn upon any question of accounts. This action is brought to compel the respondent to perform a public duty, that is, to distribute the money which the General Assembly has granted to the several towns of the state in aid of the common schools and which the section 2228 of the statutes orders him to distribute. We have already shown that there is nothing in the special appropriation act to prevent him from making the distribution. With the apparent prohibition contained in that act removed, the command in section 2228 applies to him in full force. In observing that command the respondent will strictly obey a grant and order of the General Assembly.

The Superior Court is advised to overrule the motion to quash.

In this opinion the other judges concurred.