GENERAL BROADCASTING SYSTEM, Inc., v. BRIDGEPORT BROADCASTING STATION, Inc.

BRIDGEPORT BROADCASTING STATION, Inc., v. FEDERAL RADIO COMMISSION.

Nos. 2066, 2064.

District Court, D. Connecticut.

Aug. 10, 1931.

On Rehearing, Nov. 30, 1931.

Day, Berry & Reynolds, of Hartford, Conn., and Donovan & Raichle, of New York City (Bethuel M. Webster, Jr., of New York City, Allan K. Smith, of Hartford, Conn., and Paul M. Segal, of Washington, D. C., of counsel), for General Broadcasting Co.

Cummings & Lockwood, of Stamford, Conn. (Raymond E. Hackett, of Stamford, Conn., of counsel), for Bridgeport Broadcasting Station, Inc.

HINCKS, District Judge.

These are companion cases growing out of the action of the Federal Radio Commission.

The General Broadcasting System, Inc., the plaintiff in equity case No. 2066, known as WGBS, and also the defendant therein, the Bridgeport Broadcasting Station, known as WICC, and also Station WMCA, filed applications with the Commission for licenses to broadcast on a 600 kilocycle frequency. These applications came on for hearing before the Commission on February 20, 1930, and continued until March 4, 1930. On April 21, 1930, the Commission decided that the applications of WICC for license to use the 600 kilocycle frequency be granted, and that the applications of WGBS and WMCA be refused.

Accordingly, on April 25, 1930, the Commission issued its license to WICC for operation on the 600 kilocycle frequency, and handed the same to the Radio Division of the Department of Commerce for delivery. The document itself was thus in the hands of the Department of Commerce on April 26th, when WGBS filed its appeal from the decision of the Commission to the Court of Appeals for the District of Columbia, and obtained from said court an order staying the effect of the decision of the Commission pending appeal.

This order was obtained without notice to WICC and was served on the Commission after the license had been passed on to the Department of Commerce for delivery, but prior to delivery. A majority of the Commission took the position that the matter had passed beyond their control, and the license was subsequently delivered to WICC, which, on the strength thereof, began operation on the 600 kilocycle frequency on May 1st, or shortly thereafter. This resulted in interference with WGBS, which, relying on the stay order of the Court of Appeals, continued operation on the 600 kilocycle frequency. Accordingly, WGBS thereupon sought and obtained from the Court of Appeals an enlargement of its stay order which was duly served upon WICC, as well as the Commission. The enlargement of the stay, also obtained on ex parte application, required the Commission forthwith (1) to notify WICC immediately to cease operation on the 600 frequency, but operate instead as provided in an earlier license which had expired on April 30, 1930, and had never been renewed by the Commission, (2) to notify WGBS "by renewal of license or by appropriate formal instrument that it is authorized to use the frequency of 600 kilocycles"; and (3) to recall and set aside forthwith any license "that may have been issued to Station WICC for operation at the frequency of 600 kilocycles"; all "pending determination of the issues raised by the appeal of Station WGBS or until further order of this Court."

Thereafter, on May 10, 1930, WICC filed in this court a document purporting to be an "appeal from doings of Radio Commission" on the theory that the action of the Commission in recalling its license obtained as aforesaid, pursuant to the mandatory provisions of the enlarged stay order issued

by the Court of Appeals as aforesaid, was in effect such a revocation of its license as to give it a right of appeal to this court under section 16 of the Radio Act of 1927 (47 USCA § 96). In this proceeding a temporary restraining order against the Federal Radio Commission was obtained. WGBS intervened, and finally on July 21, 1930, its motion to dismiss the "appeal" and the temporary restraining order was granted, thus disposing of equity No. 2064.

Meanwhile, on May 15, 1930, WGBS brought in this court equity case No. 2066, asking for an injunction restraining WICC from the use of the 600 kilocycle channel, and obtained a temporary restraining order, and later an injunction restraining WICC from the use of said channel until the Court of Appeals for the District of Columbia should enter its final judgment on the appeal, taken as aforesaid. In these proceedings, and as an incident to the issue of said injunction, the plaintiff therein, WGBS, gave its bond to the defendant therein, WICC, conditioned upon "payment of all damages suffered by said Bridgeport Broadcasting Station, Inc., by reason of the issuance of said preliminary injunction." The injunction was granted August 5, 1930, and as a result thereof WICC was forthwith precluded from the use of the 600 kilocycle channel until February 2, 1931, when the Court of Appeals of the District of Columbia filed its decision affirming in all respects the prior decision of the Federal Radio Commission.

Now comes WGBS as intervener in equity No. 2064, the so-called "appeal" instituted by WICC, and as plaintiff in the injunction suit, equity No. 2066, and moves (1) for an order awarding WGBS its costs in No. 2064, and (2) for an order dismissing cause No. 2066, allowing WGBS its costs therein. This motion is supported by affidavit of counsel suggesting further that the injunction bond given by WGBS in equity No. 2066 be discharged, and that the plaintiff, WGBS, should receive its reasonable attorneys' fees. This motion is opposed in all its branches by WICC.

█ Equity case No. 2064, brought by WICC, was dismissed by the court upon jurisdictional grounds. In such a case, costs rest within the discretion of the court. WICC, the plaintiff therein, having failed to sustain its claim, it seems on the whole equitable that WGBS should have its costs therein. To be sure, WGBS was not an original party in the cause. However, it was admitted on its motion to intervene, and properly so,

since it was vitally affected by the proceedings. And, having sustained its position, it is, I think, entitled to its bare costs. I find, however, neither reason nor authority for the allowance of attorneys' fees.

█ In equity No. 2066, clearly the defendant WICC is the prevailing party. The bill of complaint seeks a perpetual injunction. A temporary injunction was obtained. To that extent, to be sure, WGBS prevailed. But the ultimate issue in the case was the right of WGBS permanently to exclude WICC from the 600 kilocycle frequency, and on that issue WGBS has not prevailed. Instead, by its motion asking that its own bill of complaint be dismissed, it admits its failure to prevail. That this result flows from the decision of the Court of Appeals of the District of Columbia does not in any way affect the equities herein involved. It follows that WGBS is not entitled to costs in equity No. 2066.

█ The remaining question pertains to the effect of the injunction bond. It is now well established that in the federal courts, if liability on such a bond attaches, the damages may be determined by the court in the principal suit instead of relegating the obligee on the bond to a collateral action at law. Tullock v. Mulvane, 184 U. S. 497, 22 S. Ct. 372, 46 L. Ed. 657; Meyers v. Block, 120 U. S. 206, 7 S. Ct. 525, 30 L. Ed. 642. Consequently, notwithstanding the absence of any formal motion on the part of WICC for the assessment of damages on its bond, if the motion of WGBS that this suit be forthwith dismissed is granted, the defendant therein is precluded from its right to apply in this case for assessment of its damages. And so, before the motion to dismiss the case over the defendant's objection is granted, it is necessary to determine whether there is any liability still existing on the bond. This indeed was the principal subject of the argument in connection with the pending motion.

As to this, it seems clear that, if the stay order of the Court of Appeals of the District of Columbia, or its enlargement, was valid and effective to suspend the effect of the decision of the Radio Commission, then it necessarily follows that the defendant WICC was precluded from the 600 channel by said stay order and not by the injunction on which the bond was conditioned. If, however, the stay order or its enlargement was legally ineffective, then it follows that any damages which WICC sustained as a result of its exclusion from 600 kilocycle channel flow directly from the injunction alone. Thus it

becomes necessary to examine the legal effect of the stay order issued by the Court of Appeals of the District of Columbia.

This order, it will be observed, was issued on April 26, 1930, and the enlargement thereof on May 7, 1930. On May 19, 1930, the Supreme Court handed down its decision in the case of Federal Radio Commission v. General Electric Co., 281 U. S. 464, 50 S. Ct. 389, 390, 74 L. Ed. 969. In this decision the court construes the Radio Act of 1927 and the functions of the Court of Appeals of the District of Columbia under that act. Construing the act, the court concludes that "the powers confided to the commission respecting the granting and renewal of station licenses are purely administrative, and that the provision for appeals to the Court of Appeals does no more than make that court a superior and revising agency in the same field." The power of Congress to impose such duties on the court is not doubted, because "it is recognized that the courts of the District of Columbia are not created under the judiciary article of the Constitution but are legislative courts." Consequently, the Supreme Court denied its jurisdiction of the appeal and dismissed its writ of certiorari on the ground that the proceeding in the Court of Appeals of the District of Columbia "was not a case or controversy in the sense of the judiciary article, but was an administrative proceeding, and therefore that the decision therein is not reviewable by this court."

Possibly, as a result of this decision, Congress on July 1, 1930 (46 Stat. 844), amended the provisions of the act relating to appeals to the Court of Appeals of the District of Columbia. But the amendment, by its express terms, is not applicable to appeals filed prior to July 1, 1930. Consequently, we are here concerned with the original act of 1927 as construed in the General Electric Case, supra.

There is no question here as to the power of the Court of Appeals to issue a stay order or writ of supersedeas in the exercise of its judicial function. Instead, the question is whether said court in the performance of an administrative duty, cast upon it by the Radio Act, has that power.

The power to issue writs has been expressly conferred upon the courts of the United States by section 262 of the Judicial Code (USCA, title 28, § 377). Doubtless, in the Code of the District of Columbia or in some private act relating to the laws thereof, there is a similar provision giving to the courts of the District of Columbia similar powers. But, obviously, the exercise of such a writ is a prerogative not inherent in an administrative body. Consequently, if the Court of Appeals of the District of Columbia had such power in connection with the performance of its administrative duties under the Radio Act, the power must be derived from the provisions of the Radio Act. A reading of this act discloses no such provision in express terms. The ultimate question, therefore, is whether the power to stay decisions of the Commission is to be implied.

It is a well-established rule of statutory construction that, to determine the legislative intent, the court may take into consideration the conditions existing at the time of the legislation in question, upon which legislation was intended to operate. It is well known that in 1927 the condition of the radio broadcasting industry was chaotic, in view of the multiplicity of broadcasting stations which had sprung into being and the lack of regulatory authority to prevent disastrous interference. To relieve the tortured state of the ether, it was imperative that regulation, above all, should be prompt. A decision of the Radio Commission, subject to stay pending appeal, would have been a form of regulation lacking the promptness required by the exigencies of the situation. The very history of this case illustrates that point.

Moreover, the act itself contains language indicating that Congress did not intend that the decisions of the Commission should be stayed by the Court of Appeals pending appeal.

In general, it should be observed that the framework of the act is such that the Commission is the primary administrative body alone vested with the broad jurisdiction created by the act. The Court of Appeals, though, to be sure, a "superior revising agency" in the words of the Supreme Court, has no general revisory powers coextensive with the primary powers of the Commission. Thus, in section 5 (47 USCA § 85), with reference to appeals from acts of the Secretary of Commerce to the Commission, it is provided that "decisions by the commission as to matters so appealed and as to all other matters over which it has jurisdiction shall be final subject to the right of appeal herein given." And the only right of appeal "herein given" is the right of appeal set forth in section 16, which is confined to appeals from refusals and revocations of construction permits and of licenses. The field of appeal therefore is vastly narrower than

668

the jurisdiction of the Commission. This condition was emphasized by the amendment of July 1, 1930 (46 Stat. 844 [47 USCA § 96]), wherein the right of appeal is stated in all-inclusive terms and is further narrowed by the elimination of right of appeal from the refusal to grant a construction permit as defined in section 21 (47 USCA § 101).

The narrow limitation of the field of appeal militates strongly against the implication of power in the superior administrative agency to stay the orders of the inferior body. For, if the superior agency, by appeal or otherwise, had as wide a jurisdiction as the subordinate body, and were charged with the ultimate responsibility for the task of general administration under the act, its possession of implied powers would more readily be inferred.

Moreover, the primary purpose of the act, in so far as pertinent to this case, is, by the express terms of section 1 (47 USCA § 81), "to provide for the use of such channels, but not the ownership thereof, by individuals, firms, or corporations, for limited periods of time, under licenses granted by Federal authority, and no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license." To accomplish this purpose, the Commission is established and its powers and duties set forth at considerable length. Not only is the Commission charged with the delicate and complicated task of eliminating interference, but it is also, in section 9 (47 USCA § 89 note), required so to distribute "licenses, bands of frequency of wave lengths, periods of time for operation, and of power among the different States and communities as to give fair, efficient, and equitable radio service to each of the same." Necessarily, an adjustment sufficiently delicate to satisfy these requirements would be seriously disrupted by the issuance of stay orders prior to a hearing on the merits. Not only that, but Congress ought not lightly to be imputed with the intent of placing upon a body already so burdened with duties, judicial and administrative, as the Court of Appeals, a task requiring the full time and energy of the Radio Commission, which was created for that express purpose alone. In further emphasis of this point, it may be noticed that the later amendments to the act provided counsel and technicians as assistants, not to the Court of Appeals, but to the Commission.

■■ The field of the superior body being narrow under the express provisions of the act, the matter is one for the application of the rule that acts of an administrative body which do not come clearly within the powers granted to it by the Legislature are void. Alton Water Co. v. Illinois Commerce Commission (D. C.) 279 F. 869; Bachus-Brooks Co. v. Northern Pacific Ry. Co. (C. C. A.) 21 F.(2d) 4, certiorari denied 275 U. S. 562, 48 S. Ct. 120, 72 L. Ed. 427.

This implication resulting from the general scheme of the act is confirmed by its various provisions. Particularly significant are the provisions of section 14 (47 USCA § 94), providing for the revocation of licenses by the Commission. It is there expressly provided "that no such order of revocation shall take effect until thirty days' notice in writing thereof" be given to those interested, whereupon any person aggrieved may apply for a hearing, "and upon the filing of such written application said order of revocation shall stand suspended until the conclusion of the hearing herein directed." It thus appears that Congress very definitely had in mind the subject of stays in the operation of orders of the Commission, and in the particular instance referred to expressly provided for such stay. The absence of other provision of such power in the Commission is indicative that no further power was intended to be vested in the Commission. If so, it would seem, a fortiori, that none was intended to be vested in the Court of Appeals.

Moreover, the very scope of the "appellate" power, within its limited field as discussed above, on analysis seems not to include the power to stay. Thus section 16 provides in detail how the appeal may be taken, and concludes with the following paragraph: "At the earliest convenient time the court shall hear, review, and determine the appeal upon said record and evidence, and may alter or revise the decision appealed from and enter such judgment as to it may seem just. The revision by the court shall be confined to the points set forth in the reasons of appeal." 44 Stat. 1169. Reading the paragraph just quoted together with the paragraph from section 5, quoted above, to the effect that decisions by the Commission "shall be final, subject to the right of appeal herein given," and also in conjunction with the provisions of section 14, above referred to, to the effect that an order revoking a station license, upon application for a hearing upon such order, shall stand suspended

"until the conclusion of the hearing herein directed"—not until the decision of an appeal from such order—it seems to follow from the language used that it was the legislative intent to confer upon the Court of Appeals power only to re-examine the existence of public convenience and necessity, upon which every order and act of the Commission, directly or indirectly, is predicated.

If this be so, it necessarily follows that Congress did not intend to confer upon the Court of Appeals power to stay decisions of the Commission. A stay order may be predicated upon other considerations than those of public convenience and necessity. Take this very case. The Commission decided public convenience and necessity required the assignment to WICC of the 600 frequency, and the Court of Appeals, after hearing on the merits, came to the same conclusion and ordered accordingly. The justification for the stay order must therefore necessarily flow from considerations other than public convenience and necessity. Reference to the application for the stay order discloses that the ground on which the application therefor was based was as follows: "If said decision is permitted to become effective April 30, 1930, before this court has had an opportunity to review and revise the same, appellant will suffer irreparable loss and injury in that it will be deprived of the operation of its station WGBS during evening hours on a favorable frequency; and it will be unable to execute its contracts with advertisers for broadcasting its sponsored programs; it will lose the good will it has built up over a long period of time, and its broadcasting equipment, studio and other property will be rendered practically valueless."

It thus appears very clearly that in this case the basis of the stay order was not the welfare of the radio public, but rather the private rights of the appellant. Doubtless, it is true that in many cases a court, in the exercise of its judicial functions, may properly protect private rights even when apparently opposed to the convenience of the public. It does not follow, however, that such an order may properly issue from what the Supreme Court of the United States has described as a "superior and revising agency" in a purely administrative field.

This conclusion is strengthened by a consideration of other provisions of section 5 and section 11 of the act (47 USCA §§ 85, 91) designed to preclude licensees from the acquisition of any property right in and to any particular frequency.

If, as these sections clearly indicate, it was the Congressional intent to preclude licensees from the acquisition of such property rights, it would seem necessarily to follow that congressional intent likewise precludes the claimed existence of private rights as a basis for stays of orders predicated upon the public welfare.

Cognate legislation in the field of administration seems also to disclose a care on the part of Congress to create such power by express terms when its existence is deemed desirable. Thus the Interstate Commerce Act, it will be observed, in certain classes of cases confers the power to suspend orders by express words, nothing being left to implication. 49 USCA § 15, par. (2) and paragraph (7). And, it will be observed, even the courts in the issue of temporary stays of orders of the Interstate Commerce Commission are limited to cases in which petitioners make a showing of irreparable damage. 28 USCA § 47.

The Federal Trade Commission Act also has a certain resemblance to the legislation under consideration. By this act (15 USCA § 45) the Trade Commission is required to institute proceedings if required by "the interest of the public." The enforcement of its orders is conferred upon the Circuit Court of Appeals. The Commission itself "has not been delegated the authority of a court of equity. And a Circuit Court of Appeals on a petition to review its order is limited to the question whether or not it has properly exercised the administrative authority given it by the Act, and may not sustain or award relief beyond the authority of the Commission; such review being appellate and revisory merely, and not an exercise of original jurisdiction by the court itself." Federal Trade Commission v. Eastman Kodak Company, 274 U. S. 619, 47 S. Ct. 688, 689, 71 L. Ed. 1238. See, also, Chamber of Commerce v. Federal Trade Commission (C. C. A.) 280 F. 45.

The National Prohibition Act provides in title 2, § 6, 41 Stat. 310 (27 USCA § 16) that, "in the event of the refusal by the commissioner of any application for a permit, the applicant may have a review of his decision before a court of equity," as provided in section 5 of title 2 (27 USCA § 14). Section 5, it will be observed, provides expressly that the court "during the pendency of such proceedings may restrain the manufacture, sale," etc., except in the case of revocations. Section 9, tit. 2 (27 USCA § 21). Here again it will be observed that the power to stay was not left to implication. In

the case of Liscio v. Campbell (C. C. A.) 34 F.(2d) 646, one whose license had been revoked sought a temporary injunction compelling the administrator to grant the license, pendente lite. In confirming the decree denying this motion, Judge Hand said: "It would require strong language in any event to justify the power to grant what is in substance a preliminary mandamus, the starkest of solecisms."

Thus tested by every applicable rule of statutory construction, power in the Court of Appeals to stay orders of the Radio Commission is not to be found by implication or otherwise in the Radio Act of 1927. It results that the stay order in equity No. 2066 was without operative effect, and the injunction therein alone operated to exclude WICC from the use of the frequency legally allocated to it by the decision of the Commission. WGBS, by failure to sustain its right to the injunctive relief which it sought, has breached the condition of the injunction bond.

It results that this motion of WGBS that its own complaint be dismissed should be denied, at least until the defendant WICC has had reasonable opportunity to avail itself of its remedies on the bond. It being, however, contrary to public policy to keep the case alive indefinitely merely for the ancillary purpose discussed above, the plaintiff General Broadcasting System, Inc., at the expiration of 60 days, may have leave to renew its motion to dismiss unless the defendant WICC (Bridgeport Broadcasting Station) shall sooner institute appropriate proceedings on the bond.

Costs in accordance with the foregoing to General Broadcasting System, Inc., in equity No. 2064, and to the Bridgeport Broadcasting Station in equity No. 2066.

## On Rehearing.

A rehearing was allowed on this matter on motion of the plaintiff herein, referred to in the opinion heretofore rendered as WGBS. The plaintiff has ably argued that Congress, in passing the Radio Act of 1927 (47 USCA § 81 et seq.), intended that the Court of Appeals of the District of Columbia should have power to vacate decisions of the Radio Commission pending appeal.

 The reasoning of the plaintiff, WGBS, is this: That even though, under the decision of the Federal Radio Commission v. General Electric Co., 281 U. S. 464, 50 S. Ct. 389, 74 L. Ed. 969, the task which Congress imposed upon the Court of Appeals under the Radio Act was of an administrative nature, yet it was intended that the court, in the exercise of that administrative duty, might draw upon its judicial powers, among which is the power first conferred upon it by the act of its creation, February 9, 1893, 27 Stat. 436, c. 74, § 11, and continued in the court to the present time, D. C. Code, March 4, 1929, T. 18, § 33. This provision is as follows: "The said court of appeals shall have power to issue all necessary and proper remedial prerogative writs in aid of its appellate jurisdiction." And so, the plaintiff claims, under the power conferred by this statute, the court may stay orders and decisions of the Federal Radio Commission pending appeal. In this connection it must be noticed that in this case the stay order was granted wholly without bond or other security to WICC, the successful party to the proceedings before the Radio Commission, against such damages as WICC might sustain by reason of the stay. Consequently, the position of the plaintiff necessarily is that the court has the power to stay without requiring bond or security of the appellant.

This claim involves examination of the organic law controlling the judiciary of the District of Columbia. This law is now largely to be found in the Code of the District referred to above. This Code provides, under Title 18, that appeals to the Court of Appeals from the Police Court of the District (section 28), from the Municipal Court (section 29), from the Juvenile Court (section 30), all shall lie but shall operate as a supersedeas upon the judgment below only upon the filing of proper bond or recognizance. Section 26, providing for appeals from the Supreme Court of the District, is wholly silent on the necessity for a supersedeas bond. Section 25, however, gives the Court of Appeals power by rules "generally to regulate all matters relating to appeals." Indeed, this power in the court can be traced back to the original act of the court's creation of February 9, 1893, referred to above. The revised rules of the court, effective December 1, 1927, provide as follows:

No. X (page 19).

"1. * * *

"2. No such appeal * * * shall operate as a stay of execution or supersedeas unless within such term of 20 days the appellant shall file in the Clerk's office of the Supreme Court of the District of Columbia a

bond with surety or sureties, to be approved by one of the justices of said Court, conditioned for the successful prosecution of such appeal."

And rule 32, adopted December 1, 1927, provides: "The general rules of this Court shall apply to appeals under the Radio Act."

On the surface, it might seem strange that the Code of the District should expressly require a bond as a prerequisite to a supersedeas on appeals from the inferior courts of the District when no such provision is contained with respect to appeals from the Supreme Court of the District, which, of course, is the general court of unlimited original jurisdiction. The reason, I believe, is this: In enacting the Code of the District, Congress provided that the Supreme Court should "possess the same powers and exercise the same jurisdiction as the district courts of the United States, and shall be deemed a court of the United States." D. C. Code 1929, T. 18, § 43. Consequently, Congress felt it unnecessary to include in the Code an express provision for supersedeas bonds on appeal, believing that the appropriate section of the United States Code would apply. 28 USCA § 869, provides as follows: "§ 869. *Bond in Error and on Appeal.* Every justice or judge signing a citation on any writ of error, shall, except in cases brought up by the United States or by direction of any department of the Government, take good and sufficient security that the plaintiff in error or the appellant shall prosecute his writ or appeal to effect, and, if he fail to make his plea good, shall answer all damages and costs, where the writ is a supersedeas and stays execution, or all costs only where it is not a supersedeas as aforesaid."

The language of this section and the subsequent section, 874, headed "Supersedeas," is broad enough to apply to the courts of the District of Columbia as well as to the constitutional courts. It may, perhaps, be of significance that the language in these sections is broader than that contained in 28 USCA § 377, which is expressly limited to the constitutional courts. This section being thus limited, it was necessary for Congress to confer upon the Court of Appeals the power to issue writs by express terms. Per contra, it was not necessary for Congress expressly to provide that appeals from the Supreme Court of the District should operate as a supersedeas

only upon the taking of proper security, because the provision of 28 USCA § 869, to the same effect, already had application.

That the broad language of 28 USCA § 869, has application to legislative courts seems to be supported by Federal Trade Commission v. Klesner, 274 U. S. 145, 47 S. Ct. 557, 71 L. Ed. 972. Indeed, the Court of Appeals of the District of Columbia, in the case of Tuckerman v. Mearns, 49 App. D. C. 153, 262 F. 607, itself decided that the provisions of 28 USCA § 397, dealing with the amendments to pleadings, had application to the courts of the District, as well as to constitutional courts, and consequently was superior to any rule of court inconsistent therewith.

Under Equity Rule 74 (28 USCA § 723), the judge allowing an appeal from a decree granting or dissolving an injunction has power in his discretion to suspend the effect of the decree pending appeal. With respect to this class of cases, this power is wholly discretionary and may be exercised, at least within the limits of a wise discretion, without the security required in other cases as a prerequisite for a supersedeas. Hovey v. McDonald, 109 U. S. 150, 3 S. Ct. 136, 27 L. Ed. 888. And, "of course, where the power is not exercised by the court, nor by the judge who allows the appeal, the decree retains its intrinsic force and effect." Id., 109 U. S. page 162, 3 S. Ct. 136, 143, 27 L. Ed. 888. But this power, it would seem, is inherent in the lower court only, not the appellate court. Indeed, in the Slaughter House Cases, 10 Wall. 273, 19 L. Ed. 915, it was stated that even the Supreme Court of the United States was without power to issue a supersedeas, unless the court below in error should deny to the appellant, who had fully complied with the statute, his statutory right to a supersedeas.

It thus results that in 1927, when the Radio Act was passed, by virtue of statute and by virtue of rules of court pursuant to statute, an appeal to the Court of Appeals as an appellate judicial body did not operate as a supersedeas except upon bond. And if Congress intended that the Court of Appeals, in the performance of its administrative duties under the Radio Act, should draw upon its judicial powers, clearly Congress intended that such powers should be used only under the limitations theretofore in effect.

Thus, in Hartley v. Vitiello, 113 Conn. 74, 154 A. 255, the court held that a statute pro-

viding for service of process on nonresident motorists must be construed in the light of an existing procedural statute providing for the continuance of civil actions against nonresident and nonappearing defendants. The court said (page 82 of 113 Conn., 154 A. 255, 258): "The presumption is that the Legislature, in enacting that law, did it in view of existing relevant statutes, and intended it to be read with them, so as to make one consistent body of law. 'The general assembly is always presumed to know all the existing statutes, and the effect that its action or nonaction will have upon any one of them; and it is always presumed to have intended that effect which its action or nonaction produces.' State v. Staub, 61 Conn. 553, 566, 23 A. 924, 927; New York, N. H. & H. R. Co.'s Appeal, 80 Conn. 623, 635, 70 A. 26; Cordano's Appeal, 91 Conn. 718, 725, 101 A. 85."

In the case of Local Government Board v. Arlidge, [1915] A. C. 120, the procedure of administrative appeals received illuminating discussion by the House of Lords. The opinions indicate that the Legislature, in intrusting to an existing administrative body specific appellate duties, is deemed to have adopted the procedure theretofore established by that body.

Since the stay order in question was made without any security whatever, its issue was necessarily not in the exercise of any power inherent in the Court of Appeals in its judicial capacity. This brings us back to the question considered in my earlier opinion as to whether, under the Radio Act of 1927, the power to stay without bond is necessarily to be implied as existing in the Court of Appeals functioning as an administrative agency.

As to this, it seems to me that the force of my earlier opinion is unimpaired by the plaintiff's contention. Indeed, it would seem that the limitations imposed by law and by rule of court upon the effect of an appeal as a supersedeas confirm my earlier conclusion.

And so I am constrained to conclude that the stay order in question was not issued in the performance of a judicial function for the reasons set forth above; and that its issue as an implied incident to an administrative function was in excess of any power vested in the Court of Appeals under the Radio Act of 1927.

The decision heretofore made, I must decline to alter.