**UNITED STATES of America,
Appellant,**

v.

**E. C. NICKEL, Appellee.**

**No. 5525.**

United States Court of Appeals
Tenth Circuit.

April 26, 1957.

---

John F. Raper, Jr., Cheyenne, Wyo. (William G. Walton, Cheyenne, Wyo., was with him on the brief) for appellant.

Alfred M. Pence, Laramie, Wyo., for appellee.

Before BRATTON, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

This appeal challenges the allowance of a setoff for fixed overhead on canceled government housing projects against a claim by the government for excess payments to appellee-contractor under a cost-plus-a-fixed-fee construction contract.

The trial court held, as a matter of law, that the appellant had agreed to pay undiminished overheard on all dwelling units covered by the contract whether completed or not.

The basic facts are not in dispute. In 1946, appellant entered into a cost-plus-a-fixed-fee contract with the appellee for the demounting and panelizing of some 900 dwelling units in Seattle, Washington, and for their transportation to and reerection in Wyoming and Montana for veterans housing. The appellee commenced work on the 14 projects covering the total number of units, but when funds were exhausted, five of the projects were canceled and one partially canceled for the convenience of the government. On the date of termination, the appellant had advanced to the appellee the sum of $31,555.47 in excess of approved funds. When claim for same was made, the ap-

pellee counterclaimed for a number of items, one of which was for $20,403.00— the entire overhead provided in the contract for full performance. Upon administrative denial of the counterclaims and failure to negotiate a settlement, the government brought this action for the excess payments, and the appellee again counterclaimed for some thirteen items including the entire amount of overhead. The trial court disallowed all of the items in the counterclaim except those conceded by the government and the fixed overhead which is the subject of this appeal.

Initially, the appellant takes the position that payment of undiminished overhead is a question of fact and that appellee is conclusively bound under Section 38 of the contract by the adverse administrative findings.

But the payment of overhead undoubtedly turns on an interpretation of contractual language—a question of law of which the courts are made the arbiters. See C. H. Pope & Co., Inc., v. Bibb Mfg. Co., 2 Cir., 1923, 290 F. 586; City of Orlando v. Murphy, 5 Cir., 1936, 84 F.2d 531; Brown-Crummer Inv. Co. v. Koss Construction Co., 8 Cir., 1925, 4 F.2d 682. Indeed, Section 322 of Title 41 U.S.C., provides that "no Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board." See legislative history Vol. 2, U.S.Code Congressional and Administrative News, 83rd Cong., 2d Sess., 1954, pp. 2195–2196; see also John A. Johnson Contracting Corp. v. United States, 1955, 132 F.Supp. 698, 132 Ct.Cl. 645; Allied Contractors v. United States, 1954, 124 F.Supp. 366, 129 Ct.Cl. 400.

Assuming that the meaning of the contract is the proper subject of judicial inquiry, the appellant then takes the position that it should be construed to provide for overhead expenses based upon the percentage of physical completion of the dwelling units.

By the terms of the contract in question, the appellee was to commence work

on those houses listed in "Notices to Proceed" with payment computed under the "Schedule of Prices Per Finished Dwelling Unit." This schedule of prices included a breakdown of estimated costs, overhead, and the fixed fee, depending upon the number of "finished dwelling units". The predetermined overhead and fixed fee varied with the number of dwelling units scheduled in the notices to proceed. Article 3(c) of the contract pertinently provides that "the contractor's overhead should approximate the amounts of overhead per finished dwelling unit as set forth" in the schedule of prices, "and [the contractor] agrees to make no claim against the Government or submit any voucher for reimbursement of overhead expenses beyond those amounts per finished dwelling units assigned the contractor." Section 10 also pertinently provides that progress payments, including fixed overhead and fixed fees, would be paid "in proportion to the percentage of physical completion of the work * * *."

Finally, Section 27 of the contract specifies the procedures, rights and liabilities of the parties in the event of termination, either at the convenience of the government or for fault of the contractor. Significantly, it provides, in the event of termination at the convenience of the government, that the contractor will be reimbursed for all expenditures properly made in accordance with Section 6, which in turn provides for reimbursement of the contractor's construction costs "directly attributable to the performance of the contract"—consisting of production costs and plant rental. Production cost is defined as "actual net expenditures by the contractor on account of operations at the demolition and re-erection sites, whether * * * incurred on the site or elsewhere." The same Section goes on to specify that "none of the following overhead expenditures directly attributable to the performance of the contract and for which the contractor agrees as provided in Article 3(c) to furnish for the sum provided in the schedule set forth in Article

3 of the contract, may be included in production cost: Clerical help and expenses; Expediting employees and expenses; Communication expenses, including postage, telegraph, telephone or by other means; Traveling expenses; Cost accounting expenses * * *; [and] all office expenses, including office rent."

In addition, the government agrees in Section 27 to assume and become liable for all "obligations, commitments and claims not previously paid", undertaken in good faith by the contractor, "the cost of which would be reimbursable" under the contract. And, the government also agrees to reimburse the contractor for accounting services in connection with settlement of the contract after date of termination, and "such other service required or approved by the contracting officer." Significant also is the stipulation in Section 27 that in the event of termination at the convenience of the government, the contractor would be paid in lieu of the completed performance of the contract a fee computed in accordance with a prescribed formula. In sum, the contractor was to be made whole plus a recomputed fee.

Admittedly, there is nothing in the contract expressly providing for the payment of the full amount of the scheduled overhead upon termination; nor is there any specific provision for the adjustment of the overhead upon termination as for the fixed fee.

Invoking accepted canons of construction, the appellee would have us construe the contract strictly against the draftor to mean that the failure to specifically provide for the adjustment of the fixed overhead upon termination justifies the legal inference that the overhead expenses were to remain constant regardless of the number of finished dwelling units or the percentage of physical completion of the projects.

To substantiate this reasoning, the appellee suggests that his overhead did in fact remain constant. The trial court, however, made no such finding; indeed, the record is void of any supporting evi-

dence. The record does show that on more than two occasions during settlement negotiations the appellee was invited to submit "satisfactory evidence that the contractor actually had expended reasonable amounts of overhead identified with the cut back units in excess of overhead payable on the physical completion basis." No such evidence was submitted. Instead, the appellee chose to rely upon the letter of the contract and he must stand or fall upon it.

Strictly construing the contract, we cannot imply a positive obligation where it is notably silent. See 12 Am. Jur., Contracts, § 239, at pp. 766 & 768; East Ohio Gas Co. v. City of Akron, 81 Ohio St. 33, 90 N.E. 40, 26 L.R.A.,N.S., 92. Instead, we can only imply an obligation with respect to which the contract is silent when a consideration of the whole of its parts admits of no other reasonable construction.

With respect to the payment of overhead and fixed fees, the contract speaks in terms of finished dwelling units; and the contractor specifically agrees that his overhead should approximate the amount provided for in the contract. And, partial payments of the fixed fees and overhead expenses "were to be made at the same time as progress payments to the contractor on account of the production costs." In other words, overhead and fixed fees are geared to finished dwellings units and percentage of physical completion. In the event of termination short of completion, the contractor was to be made whole for his reimbursable production costs which explicitly did not include the overhead expenses payable on the basis of finished dwelling units under Article 3 of the contract.

Viewed in this light, we fail to find anything in the contract to support the legal inference that the government was obligated to pay unearned overhead expenses. On the contrary, we think the spirit and tenor of the contract negates any such inference. The computation of overhead based upon a percentage of physical completion is in consonance with the manifest intention to make the contractor whole, plus an adjusted fee.

The judgment is reversed with directions to enter judgment accordingly.