RYDER TRUCK RENTAL, INC.,
Appellant,

v.

CENTRAL PACKING COMPANY, Inc.,
Appellee.

No. 7713.

United States Court of Appeals
Tenth Circuit.

Jan. 28, 1965.

Rehearing Denied March 17, 1965.

Seth, Circuit Judge, dissented.

Russell W. Baker, Kansas City, Mo. (Robert H. Bingham, Kansas City, Kan., Douglas Stripp, and James F. Duncan, Kansas City, Mo., on brief), for appellant.

George Schwegler, Jr., Kansas City, Mo. (Edward A. Smith, Wayne F. Caskey, Jr., Kansas City, Mo., and James J. Lysaught, Kansas City, Kan., on brief), for appellee.

Before MURRAH, Chief Judge, and PICKETT and SETH, Circuit Judges.

MURRAH, Chief Judge.

This is an appeal from a judgment on a directed verdict, in a suit by appellant, Ryder Truck Rental, Inc., to recover damages for the breach of a refrigerated truck lease-contract with appellee, Central Packing Company, Inc.

Ryder is engaged in the business of leasing refrigerated equipment on a mileage basis. Central is in the meat packing business and used refrigerated equipment in the transportation of its products. Under the terms of the subject lease-contract, Ryder leased thirty new diesel refrigerated truck-trailers to Central for a period of six and one-half years, with the right of continuous use. Central was granted the further right to sublease any of the vehicles or assign its interest in the lease; provided, however, that "in the event of such sublease or assignment the Lessee shall remain liable for the performance of all of its obligations hereunder." See: Paragraph 5–D. Each vehicle carried Central's name in porcelain enameled letters, with its designated trade symbol. Ryder warranted that the equipment would be mechanically fit and properly equipped at all times to safely transport fresh meat and perishable commodities. Ryder was to be paid for the use of the equipment under a sliding scale mileage rate, based upon the number of miles over which each piece of equipment was used. The lease did not specify any minimum mileage use requirement, but the lessee did expressly agree to "use and operate the motor vehicle equipment * * * in the normal and ordinary conduct of its business, including but not limited to renting, leasing or subleasing said vehicles to others * * *." See: Paragraph 4–I. Central was given the right to terminate the lease and purchase the leased equipment, in accordance with a stipulated formula. In the event of cancellation for Central's default, Central agreed, at Ryder's option, to purchase the leased equipment in accordance with the same formula.

After using the trucks, apparently on a mutually satisfactory basis, for approximately six months, Central assigned the lease to Central Packing Company of Kansas. Soon thereafter, Ryder was informed by the assignee that it had no intention of making further use of the leased equipment. Ryder thereupon cancelled the lease and instituted this suit alleging a breach. Its claim in three Counts sought (I) loss of profits for Central's failure to make use of the trucks; (II) Central's purchase of the leased equipment in accordance with the contractual provisions for its breach; and, (III) compensation for repairs made to the trucks by Ryder for Central's benefit.

On pretrial and trial, Central moved to dismiss Counts I and II for failure to state a claim, and objected to the admission of any extraneous evidence on the ground that "as a matter of law * * * the lease is a * * * complete and wholly integrated instrument and * * * the intention of the parties must * * * be determined from reading and interpreting the instrument by the Court;" and that so construed, the lease "did not impose any obligation of use * * * on the part of the defendant."

Ryder also stood on the face of the contract, contending that by its terms, Central was required to use the leased equipment in the "normal and ordinary conduct" of its business. To make out its case, Ryder tendered in evidence the lease-contract, its letter of termination and proof of its damages resulting from the breach. . Judging the lease on its face, the trial Court concluded that "Central was not required to do anything, really, unless they used the equipment * * * that there is no minimum use requirement or no use requirement in the contract;" and, that Ryder's claim on Counts I and II must, therefore, fail. The Court gave judgment for Ryder on Count III, and it is not now in dispute.

 Since the dimensions of our lawsuit in its present posture are delineated by the four corners of the lease, its interpretation is a matter of law, wholly within the province of the Court. See: United States v. Nickel (10 CA), 243 F.2d 924. If, therefore, the trial Court's interpretation is correct, the directed verdict was proper. If, on the other hand, the contract is construed to obligate Central to use the equipment in the "normal and ordinary conduct" of its business, its admitted refusal to use the equipment constituted a breach, as a matter of law. In this event, the question of remedies and the extent thereof, is a matter for trial in the first instance.

Ryder contends that a covenant of reasonable use in the "normal and ordinary conduct" of Central's business is necessarily implied from the context of the whole lease, and is explicit in the language of paragraph 4–I.

 We have said that "where a written agreement between contracting parties is seemingly complete, a court will not lightly imply an additional covenant enlarging its terms." Stern v. Dunlap Company (10 CA), 228 F.2d 939, 942. "We can only imply an obligation with respect to which the contract is silent when a consideration of the whole of its parts admits of no other reasonable construction." United States v. Nickel, supra, 243 F.2d p. 927. See: Phillips Petroleum Co. v. McCormick (10 CA), 211 F.2d 361; Utex Exploration Co. v. Garwood (10 CA), 246 F.2d 547; and United States v. Essley (10 CA), 284 F.2d 518. "But if it is clear from all of the pertinent parts or provisions of the contract, taken together and considered in the light of the facts and circumstances surrounding the parties at the time of its execution, that the obligation in question was within the contemplation of the parties or was necessary to carry their intention into effect, it will be implied and enforced." Stern v. Dunlap Company, supra, 228 F.2d p. 942. And see: Carter v. Certain-Teed Products Corp., D.C., 102 F.Supp. 280, remanded 8 Cir., 200 F. 2d 754; Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 118 N.E. 214; and Corbin on Contracts, Ch. 25, Vol. 3, Sec. 568.

██ The contract was elaborate and comprehensive with regard to the rights and duties imposed upon the respective parties. Each party owed the contract the duty of good faith performance, and impliedly covenanted not to interfere with the right of the other to the fruits of its bargain. See: Local 1912 International Association of Machinists v. United States Potash Co. (10 CA), 270 F.2d 496; and United Steelworkers of America v. New Park Mining Co. (10 CA), 273 F.2d 352; 3 Williston (Rev.Ed. 1936), § 670. It is, of course, the Court's duty to construe the lease so as to effectuate the manifest intention of the parties —to give life and vitality to the language

the parties have used to express their agreement.

■ Central contends and the trial Court was apparently of the view that the obligation in paragraph 4–I "to use and operate" the equipment in the "normal and ordinary conduct" of Central's business, related solely to the manner of use and not the extent to which the equipment was to be used. Paragraph 4–A through K of the lease contains specifically enumerated covenants, each of which imposes an obligation upon the lessee with respect to the use and operation of the equipment. And, they do generally relate to the manner in which the refrigerated equipment is to be operated, and are primarily for the benefit and protection of the lessor. Thus, the lessee specifically agrees, inter alia, to operate the equipment by competent drivers; to avoid abusive handling; to reimburse the lessor for damages resulting from reckless or abusive operation; to periodically return each vehicle to the lessor's garage for inspection and maintenance to avoid interruption in service; to maintain adequate insurance coverage; to promptly notify and report to the lessor any accidents or collisions involving the equipment; to pay any special license or ton mileage taxes; to use and operate the vehicles in compliance with all lawfully imposed regulations; and to indemnify and hold the lessor harmless against all forfeitures, seizures and penalties. These express covenants are obviously designed to cover every conceivable contingency with respect to the manner of operation of the equipment.

As we construe paragraph 4–I, however, it serves the additional purpose of obligating Central with respect to the extent of use. This contextual interpretation is in harmony with what appears to be the deliberate purpose of the parties not to specify a minimum mileage requirement, while at the same time imposing an obligation of reasonable use. The manifest purpose and design of the lease was the rental of this equipment for commercial use at a mileage rate. It was essentially a "use" lease, and reasonable use was undoubtedly contemplated. While the agreement was "noticeably silent" with respect to a minimum mileage use, it was explicit with respect to "normal and ordinary" use. In these circumstances, the intention of the parties and the contractual implication become synonymous. See: Brimmer v. Union Oil of California, 10 Cir., 81 F.2d 437, 105 A.L.R. 454. That which is manifestly contemplated in fact is implied and enforced in law.

■ We construe the lease, as a matter of law, to provide for the normal and ordinary" use in the conduct of Central's business, and this obligation ran with the equipment whether subleased or assigned. The case is accordingly reversed and remanded for further trial on the remedies provided in the lease for its breach. As to that, we express no opinion.

SETH, Circuit Judge (dissenting):

I respectfully dissent from the conclusion reached by the majority that the lease agreement in paragraph 4–I contains a provision governing the extent to which the trucks and trailers are to be used.

Paragraph 4–I, which appears among a series of specific requirements relating to the method of use, states that the lessee will use and operate the units in the normal and ordinary conduct of its business. The appellant urges that this is the provision prescribing the *extent* of use. This argument requires a reference to lessee's business for a measure or standard. This would not be difficult were it not for other lease provisions which contemplate that the units be used by any other firm or individual. Thus it is not lessee's business which is the measure, but that of all these other possible users also. The argument thus assumes that the parties agreed to use as a standard the quantity of use by these unknown assignees or sublessees. The lease provides a completely unrestricted power in the lessee to so sublease or "to assign this Agreement or any Interest therein."

This right destroys the argument that lessee's business is the measure of use and leaves no standard or measure upon which a court can say the parties agreed. It appears that the lease was once assigned, the assignee went bankrupt, and it was assigned back. Thus the provision relating to assignment was used and recognized by the parties.

The same can of course be said as to the use of the same portion of paragraph 4–I as a standard for the *method* of use. Here again the method of use related to lessee's business by such a general provision, in the face of the free right to assign and sublease, has no meaning. The remaining provisions as to the methods of use are specific and would apply to any user.

Thus by assignment the method and extent of use can change without limit depending upon the nature of the assignee's or sublessee's business, and this leaves the court without any measure or standard to determine damages in the event of a breach.

The lease is of some twelve pages in length with a five page schedule attached. It apparently was the result of negotiations and redrafting. There is in schedule A a form with a column for insertion of a fixed rental and one for a mileage rental. The fixed rental column contains zeros while the mileage rental is set on a sliding scale related to the amount of use. Thus in the portion of the lease where provisions as to the amount of use should appear there are none and in my opinion there are none elsewhere in the lease.

Both parties urge that the contract is not ambiguous, and urge construction of the terms it contains to reach a result. There is no contention advanced that a provision was inadvertently omitted. The action was brought on the express terms of the lease and so defended. Thus they say in effect that the contract is complete if properly construed, hence there is no room for implication by law to provide missing provisions.

I would affirm the judgment.