MULLINAX ENGINEERING CO., a Wyoming Corporation, Appellant,

v.

PLATTE VALLEY CONSTRUCTION CO., a Partnership, and Jerome Niedfeldt and John Niedfeldt, Partners, Associated and in Business under the Common Name and Style of Platte Valley Construction Co., Appellees.

No. 85–68.

United States Court of Appeals
Tenth Circuit.

June 24, 1969.

Lawrence A. Yonkee, Sheridan, Wyo. (Austin T. Redle, of Redle, Yonkee & Redle, Sheridan, Wyo., on the brief) for appellant.

R. R. Bostwick, of Murane, Bostwick, McDaniel & Scott, Casper, Wyo., for appellees.

Before BREITENSTEIN, HILL and HOLLOWAY, Circuit Judges.

HILL, Circuit Judge.

In this diversity suit Mullinax Engineering Company, a Wyoming corporation, appeals from a decision of the district court denying its claim for damages allegedly suffered as a result of being delayed in performing under a subcontract with defendant-appellee Platte Valley Construction Company, a Nebraska partnership.

In April, 1964, Platte Valley was awarded a contract to construct seven miles of interstate highway in Johnson County, Wyoming. The contract provided for grading and surfacing, construction of overpasses and interchanges, installation of culverts, and various incidental items. Thereafter, on August 6, 1964, Mullinax and Platte Valley executed a subcontract which required Mullinax to furnish all the materials, labor, tools and equipment necessary to accomplish the subbasing and asphaltic surfacing of the highway. Platte Valley would thus be responsible for the grading and dirt moving while Mullinax would supply the gravel base and asphalt cover that would finish the project. The construction would be conducted in successive steps beginning with the grading by Platte Valley. Mullinax would then place a layer of gravel subbase over the grade, cover the gravel with a cement treated base, and complete the surface with a layer of asphalt.

Apparently in recognition of the fact that the subcontractor should begin as soon as the prime contractor completed a significant portion of the initial grading, the subcontract submitted by Platte Valley contained a statement that "Work shall commence on placing subbase material as soon as the prime contractor has sufficient portion of the grade ready so that the subcontractor can continue his operations without delay." When Mullinax received the subcontract, it added the proviso that "It is hereby agreed that this date will be not later than May 15, 1965." Both parties then signed the subcontract as modified.

Platte Valley began grading the area in June, 1964. This work continued through the summer and early winter until the construction season in Wyoming ended. Upon the return of warmer

weather in April, 1965, Platte Valley resumed work, completing enough of the grading to allow Mullinax to commence its operations on May 24, 1965. Mullinax worked through May 28 and then was forced to discontinue for lack of sufficient grade to warrant continued operation. Intermittent resumption and discontinuance of operations occurred, through June 15, with Mullinax being delayed a total of eighteen working days between May 15 and June 15. During these days of delay Mullinax had men and equipment standing idly by awaiting Platte Valley's progress. The respective parties did, however, continue their operations and the project was completed later in the year.

Contending that Platte Valley was in breach of its contractual obligation to have the grading sufficiently completed to allow Mullinax to begin on May 15 and continue uninterrupted thereafter, Mullinax sought to recover the rental value of the idle equipment as damages for the delay. The district court, in its findings of fact,[1] determined that the provision in the subcontract requiring Platte Valley to make the site ready by May 15, was qualified by the provision that "Work shall commence on placing subbase material as soon as the prime contractor has sufficient portion of the grade ready * * *." Construing the two provisions together, the court held that May 15 "was not an absolute limitation on the starting time, and that it was subject to reasonableness and favorable weather conditions." The court then concluded that adverse weather conditions and unexpected difficulty in compacting the grading surface were the causes of the delays and Platte Valley, having no control over these matters, did not breach the contract.

The record does not clearly indicate whether the contract was executed in Wyoming or Nebraska. However, because this is a diversity action this court will apply the conflict of laws principles of the forum State of Wyoming. Wilshire Oil Co. of Texas v. Riffe, 409 F.2d 1277 (10th Cir. 1969). Under Wyoming law, "where a contract is made in one state to be performed in another, the law of the state of performance will govern unless it shall clearly appear that the parties intended otherwise." J. W. Denio Milling Co. v. Malin, 25 Wyo. 143, 165 P. 1113, 1116 (1917). No such intention appearing, the law of Wyoming, the place of performance, is controlling.

Following the principles of contract interpretation established in Wyoming, we must conclude that the plain meaning of the contractual provisions in question does not support the construction given by the trial court. The subcontract states, in essence, that Mullinax shall be allowed to commence and continue operations without delay after May 15. There is no mention of weather conditions, reasonableness, or the like. Admittedly, the contract states that the subcontractor's work would not begin until the prime contractor "has sufficient portion of the grade ready * * *." Yet the time when the prime contractor was to have the grade ready was May 15. If the date of May 15 is to have any significance it must qualify the duty of the prime contractor. Clearly, the language of a contract is controlling when "that language is plain and unequivocal." Flora Const. Co. v. Bridger Valley Electric Assoc., Inc., 355 P.2d 884, 885 (Wyo.1960).

Even if the language of the subcontract is considered to be ambiguous so that resort may be had to competent evidence of extraneous circumstances, the date of May 15 still must be considered as a deadline. Jerome Niedfeldt, one of the partners in Platte Valley, testified that when the subcontract was received

---

1. "If the meaning of the [contractual] provision was apparent and unambiguous, the interpretation of the provision was for the court as a matter of law. If otherwise, * * * interpretation becomes a mixed question of law and fact." Goodman v. Kelly, 390 P.2d 244, 247 (Wyo. 1964); United States v. Nickel, 243 F.2d 924 (10th Cir. 1957).

with the May 15 date inserted, "I discussed it with my partner, John Niedfeldt, and I mentioned to him that it was more or less of a rigid thing. We tried to arrive at an opinion of whether we would want to be tied down by this date." Apparently a decision was made to "be tied down with that date," since the subcontract was signed without the date being stricken therefrom.

 Platte Valley argues that any construction contract which requires the parties to work out in the weather must be subject to reasonableness because factors beyond the control of the parties operate to frustrate prearranged deadlines. The simple answer is that courts do not reform valid contracts to conform to the unexpressed desires of the parties regardless of how appealing the reasons for doing so may be. State Farm Mutual Automobile Ins. Co. v. Petsch, 261 F.2d 331, 335 (10th Cir. 1958). We conclude that the subcontract obligated Platte Valley to insure that Mullinax would be allowed to begin work on May 15 and continue thereafter without delay. It follows then that where a prime contractor fails to prepare the premises in a state of readiness, so that the subcontractor can proceed with the work at the time contemplated by the subcontract, and the subcontractor is damaged thereby, the prime contractor is liable for the damages caused by the delay. Studer v. Rasmussen, 344 P.2d 990 (Wyo.1959).

The trial court apparently concluded in Findings of Fact Nos. 14 and 15, that Mullinax failed to carry the burden of proving that it sustained damages as a result of the delays. The reasoning for so holding is not clear. To the extent that the finding is based on the factual conclusion that equipment was not idled by delay, the finding is clearly erroneous. To the extent that the finding is based upon the legal conclusion that damages for delay may not be based on rental value, the finding constitutes an erroneous interpretation of Wyoming law. Studer v. Rasmussen, 344 P.2d at 999.

The order dismissing the complaint and petition is set aside and the case is remanded to the district court for further proceedings necessary in the computation of damages.