STUDIENGESELLSCHAFT KOHLE
mbh, Plaintiff,

v.

NOVAMONT CORPORATION,
Defendant.

v.

MAX–PLANCK–INSTITUT FUR KOHLENFORSCHUNG, Dr. Med. Marianne Whitte and Dr. Erhart Ziegler, Heirs of Maria Ziegler,

and

Wilhelm Schmidtmann, Executor of the Estate of Maria Ziegler, Additional Defendants on Counterclaim.

No. 77 Civ. 4722.

United States District Court,
S. D. New York.

Sept. 2, 1981.

Sprung, Felfe, Horn, Lynch & Kramer, New York City, for plaintiff; Arnold Sprung, Nathaniel D. Kramer, New York City, of counsel.

Morgan, Finnegan, Pine, Foley & Lee, New York City, for defendant; Harry C. Marcus, New York City, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff Studiengesellschaft Kohle mbH ("SGK") has moved post-trial under Fed.R. Civ.P. 52(b) to amend the court's findings and under Rule 59(a) for a new trial. The motion for a new trial will be denied. However, certain errors in the findings have been pointed out by the parties and

certain corrections will be made pursuant to Rule 52(b).

In addition, the trial itself having been bifurcated, the issue of damages remains to be decided; a dispute regarding the cut-off date for the accounting of damages by defendant Novamont Corporation ("Novamont") has arisen. This last issue will be addressed first.

For purposes of this opinion, familiarity with this court's opinion of June 30, 1981 is presumed. *See Studiengesellschaft Kohle mbH v. Novamont Corporation*, 518 F.Supp. 557 (1981).

The parties disagree regarding the proper manner of calculating royalties due to SGK from Novamont for polypropylene produced under U. S. patent number 3,113,115 ("the 115 patent") prior to the expiration of that patent on December 3, 1980. SGK contends that royalties are due on all polypropylene produced by Novamont up until that date, regardless of the date on which that polypropylene was sold or used. It is SGK's position that sales price is to be used as a measure for the calculation of royalties, but that the date of sale is irrelevant to the time of accrual of royalties. Novamont contends that it owes royalties only on polypropylene both produced *and* "sold or used" prior to December 3, 1980. Both parties rely on the language of their agreement dated July 1, 1974. I have concluded that SGK's contention is correct, and that Novamont must account to SGK for all polypropylene produced before December 3, 1980, regardless of the date of sale.

The agreement provides that "LICENSEE agrees to pay LICENSOR a royalty on all polypropylene *produced and either used or sold* by LICENSEE pursuant to the License granted herein as follows ...." [emphasis added]. It then sets forth a sliding scale of royalty rates, tied to the "net sales," in dollars, of polypropylene "sold by LICENSEE pursuant to the License granted hereunder in each contract year." These provisions are supplemented by others that deal with the amount and calculation of royalties and set forth instructions for their accounting and payment. Article V pro-

vides that "[w]ithin sixty (60) days following the close of each calendar quarter year during the life of [the agreement]," Novamont is to furnish SGK with an accounting computing all royalties then due and "indicating the quantity of polypropylene manufactured and either used or sold" by Novamont.

█ It is true, as Novamont contends, that these provisions tie the royalty payments due not only to the amount "produced" by Novamont during any given accounting period, but to the amount both produced *and* used or sold. However, in the peculiar circumstances present here, that fact provides no clear guidance, for it is unlikely that either party to the agreement had this kind of situation in mind when drafting the agreement. The agreement covers many patents, all of which are alleged by SGK to be implicated in Novamont's production of polypropylene, and some of which have years to run before they expire. Novamont disputes the applicability of the other patents to its production. Payment is made not under each patent, but under the agreement as a whole, per pound of polypropylene produced. The agreement does not provide for a situation such as this, in which one patent expires prior to the termination of the agreement as a whole, and the parties disagree about the continued coverage by the agreement, through the surviving patents, of Novamont's production, sale, and use of polypropylene. In view of this "unforeseen contingency," I deem it appropriate to resolve this dispute based on the apparent general intent of the parties, as evidenced in the only provision of the contract that applies to an analogous situation. *Cf. New York City Housing Authority v. Medlin*, 57 Misc.2d 145, 291 N.Y.S.2d 672, 676 (N.Y.Co.Civ.Ct. 1968) (when "unforeseen contingency" frustrates the intention of the parties, court may accomplish for them what they failed to do for themselves).

If Novamont's argument were accepted, a licensee anticipating a patent's expiration could freely produce vast quantities of polypropylene prior to the expiration of that

patent, but wait until after the expiration date for sale, and thereby avoid payment for material produced during the period of the patent's validity, pursuant to the license agreement. Although there is no contract provision specifically intended to avert such a situation, there is one provision that indicates that the parties did not intend that the licensee should be able to avoid payment for polypropylene produced under the agreement, regardless of when it is sold. Article IV outlines the procedure to be followed and governs the manner of calculating royalties upon expiration of the agreement. Article IV contains the following provision: "LICENSEE shall, after any termination of this Agreement (including the expiration thereof), render a final accounting for all Polypropylene produced and/or sold up to the actual date of termination . . . ." This provision, applicable as it is to the termination of the agreement as a whole and not to the expiration of one covered patent, is nonetheless relevant here, for what it reveals about the intention of the parties. In providing that Novamont is to pay for all polypropylene "produced and/or sold" up to the date of termination, it seeks to ensure that the licensee will be bound to pay for all material produced under the agreement, regardless of the date of its sale. It is reasonable, I think, to conclude that a comparable provision should be implied into the agreement to cover the analogous situation present here, the expiration of one patent, and to hold Novamont accountable for royalties for all polypropylene produced under that patent, regardless of the date of sale.

In view of Article IV, I conclude that it is reasonable to assume that the parties themselves would have included such a provision had their attention been called to the possibility that a situation such as that presented here would arise; this construction is therefore appropriate. *See Neuman v. Pike*, 591 F.2d 191, 195 (2d Cir. 1979); *Snyder v. Howard Johnson's Motor Lodges, Inc.*, 412 F.Supp. 724 (S.D.Ill.1976); *Gould v. American Hawaiian Steamship Co.*, 331 F.Supp. 981, 990 (D.Del.1971). *See generally Ryder Truck Rental, Inc. v. Central*

*Packing Co.*, 341 F.2d 321 (10th Cir.), *cert. denied*, 382 U.S. 827, 86 S.Ct. 60, 15 L.Ed.2d 71 (1965) (court will imply provision in contract when necessary to carry intention of parties, as evinced by whole contract, into effect).

I therefore conclude that Novamont must account to SGK for all polypropylene produced under the 115 patent at its Neal, West Virginia plant, on or before December 3, 1980, regardless of the date of its sale.

■ SGK has moved for a partial new trial on the issue of whether Novamont is entitled to prevail on that portion of its counterclaim based on the accrual provision of the Diamond Shamrock agreement. In my prior opinion, I ruled that Novamont is entitled to a set-off of $94,651 based on that portion of its counterclaim. SGK contends that that ruling was erroneous, for several reasons. First, SGK argues that Novamont did not make a timely written request for the accrual right, as it was required to do under the license agreement, and therefore waived any right it may have had to an accrual provision. Second, SGK claims that Novamont's counterclaim was barred by the statute of limitations. Third, SGK asserts that the 1975 agreement constituted an accord and satisfaction, blocking Novamont from subsequently complaining that it was improperly denied an accrual right. Finally, SGK contends that Novamont did not show that the Diamond Shamrock license in its entirety was more favorable than its own, and that in the absence of such proof it is not entitled to the benefit of one favorable provision. These arguments warrant scant discussion.

As discussed in my prior opinion, Novamont did attempt to secure the right to accrue during its negotiations with Ziegler. Based on the response it received during those negotiations, Novamont could reasonably have concluded that the submission of a formal written request would have been an exercise in futility. Therefore, although the request Novamont did make may not have been a formal written one, I conclude that it was sufficient to withstand SGK's

present argument that Novamont waived any claim it may have had to entitlement to accrue. *See Scholle v. Cuban-Venezuelan Oil Voting Trust*, 285 F.2d 318, 320 (2d Cir. 1960) ("[a]cts made futile by the breaching party are not a prerequisite to recovery by the party claiming to have been wronged"); *Allbrand Discount Liquors, Inc. v. Times Square Stores Corp.*, 60 A.D.2d 568, 399 N.Y.S.2d 700, 701 (2d Dep't 1977) ("[o]nce it becomes clear that one party will not live up to the contract, the aggrieved party is relieved from the performance of futile acts, such as conditions precedent .... ").

■ The statute of limitations defense, although raised in SGK's reply to Novamont's counterclaim, was abandoned in its pre-trial order. It is therefore no longer available to SGK. *See Fogel v. Chestnutt*, 533 F.2d 731, 738 n.7 (2d Cir. 1975), *cert. denied*, 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976).

■ As to the defense of accord and satisfaction, SGK has not carried its burden. There is no evidence in the record of any express statement by either of the parties, either during the negotiations leading up to the 1974 agreement, at the time it was entered into, or in the agreement itself, that the agreement was intended to constitute an accord and satisfaction. In the absence of any expression of intent by the parties to enter into an accord and satisfaction, SGK is not entitled to prevail on this defense. *See Colonial Airlines v. Janas*, 202 F.2d 914 (2d Cir. 1953); 6 *Corbin on Contracts* § 1277.

SGK's argument that Novamont failed to show that the Diamond Shamrock agreement was more favorable in its entirety that the Novamont agreement also fails. SGK points to three provisions in the Diamond Shamrock agreement that it says rendered that agreement less favorable than the Novamont agreement. First, Diamond Shamrock was required to make a $200,000 downpayment which was not required of Novamont. Second, the Diamond Shamrock agreement, unlike the Novamont agreement, did not allow deductions for royalties paid under third parties' patents.

Third, and again unlike the Novamont agreement, the Diamond Shamrock agreement did not impose an obligation on SGK to sue infringers.

■ Despite those differences, based on the proof before me, I find that the evidence preponderates that, even without the creditable downpayment provisions to which I previously found Novamont was not entitled, the Diamond Shamrock agreement as a whole was more favorable than the Novamont agreement. I base this conclusion on the difference between the royalty provisions contained in the two agreements and on the accrual right granted to Diamond Shamrock but denied to Novamont. The royalty provisions in the Diamond Shamrock agreement were more favorable than those in the Novamont agreement. The accrual provision was also more favorable. Based on these provisions, and despite the factors pointed to by SGK, I find that Novamont carried its burden of proof regarding the more favorable nature of the Diamond Shamrock agreement as a whole.

That portion of SGK's motion that seeks a new trial on the $94,651 set-off is accordingly denied.

Finally, as indicated above, SGK's motion pursuant to Rule 60(a) will be granted in part and denied in part, and the opinion of June 30, 1981 is hereby amended as follows:

Footnote 1.

Add: "license agreement relating to the" between the words "its" and "115" in the first sentence.

Footnote 1.

Delete the period after the word "process" and substitute a comma; add "which were not the subject of pretrial discovery, nor contained in the pretrial order and were therefore precluded by the court from consideration upon the trial." after "process."

The amended footnote 1 thus reads as follows:

SGK in its complaint alleged violations of its license agreement relating to the 115 patent without identifying any particular

plant where the violations were said to occur. At the outset of the trial, the parties noted an additional aspect to their dispute. SGK noted that all its discovery and proposed evidence related to the activities of Novamont at its Neal, West Virginia plant, but that certain information indicated the possibility its patent might be infringed by the production of Novamont's LaPort, Texas plant. The parties were unable to stipulate in advance as to the res judicata effect, or lack of it, of the judgment to be entered on this opinion. No facts were adduced in this action concerning the LaPort plant, the process used by Novamont at that plant or the production figures resulting from that process, which were not the subject of pretrial discovery, nor contained in the pretrial order and were therefore precluded by the court from consideration upon the trial. This opinion therefore does not address such issues.

P. 4, line 7—substitute "Industries" for "Drug."

P. 9, line 12—substitute "Industries" for "Drug."

P. 19, line 16—delete the comma after "projected"; substitute "annual" for "unusual."

P. 22, line 26—eliminate "Diamond Shamrock and."

P. 22, line 27—substitute "agreement" for "agreements."

The memorandum opinion disposes of the motions to date, and it is assumed no further hearing will be required to calculate damages. In the event that the court's assumption is optimistic, and a hearing is required, it will be held at 10:00 a. m. on September 10, 1981. If the assumption is accurate, settle judgment on notice within ten (10) days.

IT IS SO ORDERED.