HARRISON WESTERN CORPORATION,
a Florida Corporation,
Plaintiff-Appellee,

v.

GULF OIL COMPANY, a Pennsylvania Corporation, Defendant-Appellant.

No. 80–1715.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 28, 1981.

Decided Nov. 2, 1981.

Rehearing Denied Nov. 20, 1981.

James P. Cowley, Watkiss & Campbell, Salt Lake City, Utah, for plaintiff-appellee.

James G. DiZerega, II, Gulf Oil Corp., Denver, Colo., for defendant-appellant.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The dispute here pertains to the meaning to be given to a contract between Harrison Western Corp. and Gulf Oil Co. In this contract, Harrison Western Corp. agreed to construct an underground uranium mine for Gulf Oil Co. in Valencia County, New Mexico. The particular dispute arose surrounding the handling of the cost of workmen's compensation insurance under the contract. Harrison Western received certain adjustments to premiums based upon its favorable safety record. Due to the good record of Harrison, the adjustments resulted in decreases in premiums paid.

Under § 8.21(d) of the contract, Harrison Western was required to maintain workmen's compensation insurance. The construction contract generally is a cost plus arrangement. Harrison Western received reimbursable costs plus a monthly fee under the contract. Under the express terms of the contract, insurance (including workmen's compensation) purchased at Gulf's request to cover risks created by the project is reimbursable. The provision of the contract which is the center of the dispute is § 5.2, which reads as follows:

> In addition to the monthly fee, Owner [Gulf] shall reimburse contractor [Harrison] as provided for below for all reimbursable costs paid or incurred by contractor while this contract is in effect, for work performed in accordance with this contract. The term "reimbursable" costs in this contract means only those items listed in Exhibit "V" which is attached hereto and made a part hereof. It is agreed that *the term "reimbursable costs" shall not include any adjustments under retrospective rating or similar type insurance plans. Owner will not participate in any such adjustments*, whether they increase or decrease the premiums of any insurance carried by contractor pursuant to the provisions of this contract. (emphasis added)

The dispute arose following the reduction by the insurance company of Harrison's workmen's compensation insurance premiums, based on a downward modification of its experience rating. Harrison nevertheless continued to bill Gulf for insurance charges without passing on the premium savings. Thereafter, Gulf deducted $206,190.44 for the workmen's compensation insurance premium adjustments realized by Harrison but not passed on to Gulf. This deduction was made from a bonus amounting to $300,000 that was due from Gulf to Harrison. Harrison filed suit, and cross motions for summary judgment were heard on the issue of the construction of § 5.2.

Both the parties agreed to submission and determination on summary judgment. Both parties represented to the trial court that the question was appropriate for summary judgment, there being no dispute as to questions of material fact. However, both parties, at different stages of this appeal, have suggested that inferences ought to be drawn from the facts which are in some instances contrary to statements contained in opposing affidavits. Further, Gulf has argued that if we do not reverse the trial court and enter summary judgment in favor of Gulf, there exists at least one dispute as to material facts which must be remanded for trial. We have recognized in our statement of facts some disputed areas. We do not, however, find it necessary to resolve these factual questions in this appeal.

We are fully aware of the fundamental principle that summary judgment is not to be granted unless the pleadings, depositions, answers to interrogatories and ad-

missions on file, together with the affidavits, if any, show that there exists no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Cayce v. Carter Oil Company*, 618 F.2d 669, 672 (10th Cir. 1980); Rule 56(c), Fed.R.Civ.P. It is also settled doctrine that the fact that both parties have moved for summary judgment does not permit the entry of a summary judgment if disputes remain as to material facts. *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431 (10th Cir. 1979); *Securities & Exchange Commission v. American Commodity Exchange, Inc.*, 546 F.2d 1361 (10th Cir. 1976); *Rains v. Cascade Industries, Inc.*, 402 F.2d 241 (3rd Cir. 1968). However, cross motions for summary judgments do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties. *Securities & Exchange Commission v. American Commodity Exchange, Inc., supra; H. B. Zachry Co. v. O'Brien*, 378 F.2d 423 (10th Cir. 1967).

As will be apparent, our resolution of the questions presented does not require resolution of any of the factual disputes in the case. Our conclusion is that no disputed material facts remain and summary judgment was appropriate.

The trial court granted the motion of Harrison for summary judgment. It held that although the workmen's compensation rating plan in question is "prospective" rather than "retrospective," it is *similar* to a retrospective rating plan within the meaning of § 5.2 and for that reason a summary judgment for Harrison should be granted. The contract provision excluded from reimbursable costs adjustments under not only "retrospective rating" but also "similar type insurance plans." The trial court concluded that under either a prospective or retrospective rating scheme, premiums "are adjusted by an experience or rating plan for the industrial risk." The court concluded as follows:

It is inconceivable why Gulf would have desired to shift the risk of premium changes to Harrison under a retrospective plan but not under a prospective plan. Especially given the similar purposes, goals and methods of those plans, it seems highly unlikely that Gulf's participation in such adjustments would hinge upon mere labels. If indeed Gulf wanted Harrison to bear the risk or reap the benefit of adjustable premiums only if a retrospective plan were utilized, it would have been simple for those who drafted the contract for Gulf to so state. The fact that the word "similar" was employed indicates clearly an intent to shift the risk to Harrison, not only under retrospective plans but under all other plans having like purposes and attributes.

The court went on to say that the goal of an adjustable premium plan is to encourage the party paying the premiums to incur fewer losses through development of safety practices. The court said that that goal could not be best achieved by placing the actual risks and benefits on Gulf, for it had no real control over Harrison's employees or the condition of their tools and machinery, or their safety practices.

The court continued:

A review of the contract leaves the impression that Gulf did not wish to expose itself to the risk of fluctuating premiums. By fixing its premium expense at a definite amount, Gulf shifted to Harrison the risk of higher premiums. Gulf, therefore, should not be permitted to reap the benefit of lower premiums occasioned by Harrison's improved safety record.

The trial court thus bottomed its decision on the fact that the premiums at issue were based upon a plan *similar* to a retrospective rating plan.

## I.

### THE FACTUAL BACKGROUND

We have already mentioned the terms of § 5.2 of the contract. As originally drafted, the contract did not contain the language excluding certain insurance costs according to § 5.2. The contract, including the language added to § 5.2, was drafted by Gulf. Employers are required under the laws of

the several states to provide workmen's compensation protection to their employees. Injured employees are entitled to the benefits as fixed by statute. The state also establishes certain standard insurance rates, according to job classifications, for workmen's compensation coverage. These established rates are referred to as "manual" rates. They reflect the average loss experience in the job classification among all employers of the state.

Affidavits of persons expert in the insurance field were filed by both parties. It appears from these affidavits that there are basically two types of workmen's compensation insurance. Under a "fixed," "guaranteed" or "prospective" rating plan, the manual rate is applied to the employer's payroll and multiplied by an experience modification factor to arrive at a standard premium. A premium discount may be subtracted from the standard premium to reflect reduction in administrative cost based on premium size, and an assigned risk surcharge may be added.

The experience risk factor is determined based upon the employer's actual loss experience in the first three of the four years immediately preceding the premium period. If the loss experience is worse than average, the experience factor will exceed 1.0, resulting in a higher than average standard premium; the opposite is true if the loss experience is more favorable than average.

Under some prospective plans, however, the experience modification factor is not used. In such cases, the premium is based on the manual rate and is not affected by the employer's actual loss experience.

Under retrospective rating plans, the premium for a policy period is estimated by use of the manual rate, the employer's payroll and an experience modification factor. At the end of the premium period, an adjustment to the premium for the past period is made based on the actual loss experience during the period. Under the insurance policy, adjustments may be made periodically for several years after a policy period based on payments made on claims which arose during the period.

The Harrison Western plan is unquestionably prospective in its general nature. For three years, the premium was calculated with experience modifiers of 1.05, 1.0 and .95, respectively. Thus, in the first year the insurance cost was slightly greater than the manual rate. In the second year it was equal to the manual rate and in the third year it was lower than the manual rate. Harrison Western billed Gulf for its actual insurance costs for the first three years.

In April 1976, Harrison Western hired Edward F. Michalik to examine the books; he found that Harrison Western's books and records were in a bad state. As a result of his review and reorganization of their procedures, in the fall or early winter of 1977, he discovered that the billing of workmen's compensation insurance costs appeared to be inconsistent with § 5.2 of the Gulf contract. Allan G. Provost, Vice President and General Manager of Harrison Western, confirmed that Gulf should be billed without reference to the experience modifier which, up to that time, had been used. In February 1978, Michalik issued an invoice for reimbursable expenses incurred in January, 1978. This January invoice was the first on which Gulf was not billed for workmen's compensation insurance using Harrison Western's experience modifier. But from that time on, Harrison Western continued to bill Gulf based on the manual rate without regard to experience modification. Each of the invoices included a sheet on which workmen's compensation insurance costs were calculated. It is to be observed that the calculations on invoices prior to the January invoice contained an experience modification factor, whereas beginning with the January invoice, no such factor is used.

Michalik completed his review of the Gulf contract in July, 1978 and prepared an invoice reflecting corrected charges for workmen's compensation insurance from the beginning of the contract. The invoice stated that the charges have been corrected "in accordance with the contract terms and Contract Section 5.2;" Harrison Western

issued Gulf a check for over $21,000. Although Gulf requested and received further documentation regarding workmen's compensation costs in September 1978, no protest was raised at that time in regard to the failure to use the experience modifier. As noted, Harrison Western's modification factor approximated 1.0 for the first three years of the project.

By a letter dated January 17, 1978, Harrison Western received notice that its modification factor beginning October 1, 1977 would be .68. This factor resulted in a saving of 32% from the manual rate. It is not clear whether Michalik knew of the decreased modification factor when the January 1978 invoice was prepared or mailed. Gulf has suggested that this court should infer, from the sequence of events, that Harrison Western decided to bill Gulf without the experience modification factor only after learning that the factor was being reduced substantially. Both Provost and Michalik, on the other hand, state that at the time the billing error was discovered and the determination made to correct it, Harrison Western had no knowledge of the reduced factor. In any event, our disposition of the case is such that resolution of this argument is not essential, so we do not resolve this question.

In March 1979, C. A. Schalck, an internal auditor at Gulf, discovered that Harrison Western was not billing Gulf for actual workmen's compensation insurance costs. Affidavits of Gulf employees state that such fact had not been previously discovered by Gulf in reviewing any of the invoices after January 1978, including the July 1978 invoice. It is argued by Harrison Western that Gulf had notice of the change in billing practice by virtue of the calculation sheets attached to each invoice, or by virtue of the July 1978 correction of workmen's compensation billing. We need not resolve this dispute either. The audit continued and the information was processed through various departments at Gulf. In any event, in late June 1979, the information was finally brought to the attention of F. S. Mooney, Senior Vice President at Gulf. At a meeting on July 3, 1979, it was decided that more than $200,000 in overpayments should be recovered from Harrison Western by deducting that amount from a $300,000 payment which Gulf owed to Harrison Western by virtue of progress on the contract sufficient to earn Harrison Western a bonus. The amounts were in fact deducted from the $300,000 and this suit followed.

It is to be noted that negotiations concerning extension and expansion of the contract for mine construction commenced in April 1979 and culminated in a letter agreement dated June 8, 1979. In that agreement, Gulf acknowledged Harrison Western's entitlement to the balance of the early completion bonus under the original contract in the amount of $300,000, to be paid by July 1. Although various contract terms were modified or deleted, no mention was made of § 5.2 and no alterations were made to that section. Harrison Western first learned of Gulf's position on workmen's compensation billing when it received its bonus check in mid-July with a substantial deduction for workmen's compensation insurance. Harrison Western's suggestion is that Gulf acted with less than complete candor in negotiating a new agreement, in which its obligation to pay the bonus was recognized, without mentioning its concern about § 5.2 or its intentions with regard to workmen's compensation insurance. But Gulf maintains that it did not decide to recover the insurance costs until after the letter agreement was negotiated, and that it properly deducted the sums from the bonus payment. We do not regard it as necessary to ascertain the presence or absence of good faith in this instance any more than we needed to do so when the shoe was on the other foot. The litigation turns on construction of § 5.2 of the contract.

We are cognizant that "it is the court's duty to construe the instrument so as to effectuate the manifest intention of the parties . . . ." *Superior Oil Co. v. Western Slope Gas Co.*, 604 F.2d 1281, 1288–1289 (10th Cir. 1979), quoting *Ryder Truck Rental, Inc. v. Central Packing Co.*, 341 F.2d 321,

323–324 (10th Cir.), *cert. denied*, 382 U.S. 827, 86 S.Ct. 60, 15 L.Ed.2d 71 (1965). If the terms are clear, the intent of the parties must be ascertained from the contract it-self. *Brown v. American Bank of Commerce*, 79 N.M. 222, 441 P.2d 751 (1968); *McKinney v. Davis*, 84 N.M. 352, 503 P.2d 332 (1972). If the contract is unambiguous, construction of the contract is a question of law and summary judgment is appropriate. *C. F. Braun & Co. v. Oklahoma Gas & Electric Co.*, 603 F.2d 132 (10th Cir. 1979); *Jaeco Pump Co. v. Inject-O-Meter Manufacturing Co.*, 467 F.2d 317 (10th Cir. 1972). A contract is ambiguous only if it is reasonably and fairly susceptible of more than one meaning; the fact that the parties disagree as to the meaning does not establish the presence of ambiguity. *Vickers v. North American Land Developments, Inc.*, 94 N.M. 65, 607 P.2d 603 (1980); *Cain v. Nat'l Old Line Insurance Co.*, 85 N.M. 697, 516 P.2d 668 (1973). So, it is with reference to these principles that we consider the contract provisions at issue here.

## II.

### IS HARRISON WESTERN'S PLAN SIMILAR TO A RETROSPECTIVE RATING PLAN?

■ Black's Law Dictionary contains the following brief definition of "retrospective":

> Looking backward; contemplating what is past; having reference to a state of things existing before the act in question. *Walker County Fertilizer Co. v. Napier*, 184 Ga. 861, 193 S.E. 770, 773.

Black's also defines the word in the context of the law as follows:

> A law which looks backward or contemplates the past; one which is made to affect acts or facts occurring, or rights accruing, before it came into force. Every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past.

When the contract § 5.2 referred to retrospective rating, or similar type insurance plans, it was referring to a plan which does look at the past, like the past experience which was considered under Harrison's plan in the present case. Gulf has stated that it "will not participate in any such adjustments, whether they increase or decrease the premiums of any insurance carried by contractor pursuant to the provisions of this contract." Our conclusion is, from reading the contract and considering it in the present context, that the words are plain and unambiguous. Gulf states very positively that it will not participate in any such adjustments under a retrospective rating or similar type insurance plan. Although the policy in question is regarded as prospective, it does have a retrospective aspect about it.

Affidavits that are on file in connection with the motion for summary judgment contain various examples of similarities and dissimilarities between retrospective rating plans and prospective ones. It is to be noted that under Harrison Western's prospective plan, an experience modifier is calculated based upon Harrison Western's claims experience in the first three of the four years immediately preceding a policy year. Thus, Harrison Western does not have a prospective plan which results in payment based on the manual rate without regard to claims experience. The key difference between retrospective plans and Harrison Western's plan, as pointed out in the affidavit of E. J. Holland, is in the method of premium calculation. As we have already noted, a retrospective plan involves an adjustment to the premium after the end of a policy period, based on the claims experience for that period. The premium under prospective plans, such as Harrison Western's, is calculated at the beginning of the policy period and is not later altered based on the claims experience of the period.

Sam W. Aiena, in his affidavit, points out similarities between the two types of plans. Harrison Western's plan and retrospective plans provide for reductions or increases in the manual rate based upon the extent to

which an employer's loss experience differs from the average loss experience. In both cases, therefore, an employer's loss experience affects the premium paid. In each case, the basic factors in premium calculation are the manual rate and the employer's payroll.

Especially in view of the reasonable purposes of § 5.2, we agree with the trial court that Harrison Western's plan is of similar type to a retrospective plan. The plans do indeed share common characteristics and are alike in substance and essentials. While the method of premium calculation differs, the basic factors involved are alike and the end result is essentially the same.

### III.

IS THE EXPERIENCE MODIFICATION FACTOR UNDER HARRISON WESTERN'S INSURANCE PLAN AN ADJUSTMENT WITHIN THE MEANING OF § 5.2?

Bouvier's Law Dictionary has a definition of adjust. This brief statement is as follows:

> To put in order; to determine an amount due. See *State v. Staub*, 61 Conn. 553, 23 A. 924.

The essential issue in this case, which was presented to the trial court and which is now presented on this appeal, is whether the change to the manual rate caused by Harrison Western's experience modifier constitutes an "adjustment" under a "similar type" insurance plan within the meaning of § 5.2 of the contract. If the experience modifier is an adjustment under a similar type insurance plan, Gulf, as we mentioned above, has stated that it is not going to participate in any increases or decreases of premiums caused thereby. If, on the other hand, the experience modifier is not an adjustment, Gulf would not be required to reimburse Harrison Western other than for actual insurance costs and the judgment should have been entered in favor of Gulf.

Gulf has argued that "adjustment under a retrospective rating or similar type insur-

ance plan" is a phrase with a specific, technical meaning in the insurance industry. It maintains that such adjustments include only retrospective alterations of premiums and cannot be read to include an experience modification under a prospective plan. Harrison Western argues that the terms have no such single, technical meaning. Even assuming, as Gulf contends, that the terms do have a technical meaning in the insurance industry, there is no support for the view that such technical meaning is to be applied to this construction contract.

Words in a contract are presumed to have been used in accordance with their ordinary meaning. In our view, the term "adjustment" includes the change in the manual rate brought about by application of an experience modifier, if the ordinary meaning of "adjustment" is considered. After all, an experience modifier is a correction or modification and thus an adjustment which reflects actual conditions. This view is strengthened by the immediately following sentence of § 5.2: "Owner will not participate in *any* such adjustments, whether they increase or decrease the premiums of *any* insurance...." (Emphasis added). Since an experience modifier does increase or decrease the premium of insurance, support is lent to the view that an experience modifier is an "adjustment" within the meaning of § 5.2.

The ordinary meaning of "adjustment" controls here, unless the evidence demonstrates a technical meaning of which the parties knew or had reason to know. *Cain v. National Old Line Insurance Co., supra; United States v. Haas & Haynie Corp.*, 577 F.2d 568, 574–575 (9th Cir. 1978). There is not even slight indication that a technical or special meaning was intended or even known to Harrison or Mr. Provost. Accordingly, we look to the ordinary meaning of the word.

### IV.

DOES THE TRIAL COURT'S CONSTRUCTION OF § 5.2 STAND THE TEST OF REASONABLENESS?

Gulf's argument is that it is unreasonable to believe that Harrison Western would

have agreed to proceed with the construction project unless Gulf agreed to pay all workmen's compensation costs. Gulf argues that the risk of incurring significant costs in excess of the manual rate would preclude such an agreement.

The affidavits on file in the case tend to establish that both the construction of § 5.2 advanced by Gulf and the construction advanced by Harrison Western are reasonable. Brian Davidson, who suggested and approved the language on behalf of Gulf, intended and understood that only retrospective rating plans would be affected. The language "or similar type insurance plans" was included, according to Mr. Davidson, because insurance companies use a variety of names for retrospective rating plans. Gulf did not want to participate in adjustments under a retrospective plan for the reason that such adjustments can occur years after a policy period. Thus, Gulf might be called upon to make payments after a project was complete, and the cost of insurance would remain uncertain until the final settlement.

On behalf of Harrison Western, Mr. Provost, who executed the contract for them, maintained that he understood § 5.2 to exclude from reimbursable costs any claims experience adjustments to the manual premium. His intent was that Gulf would pay the manual rate, regardless of any increases or reductions caused by Harrison Western's claims experience. Provost saw the provision as having two purposes: (1) Harrison Western would have added incentive to conduct the work as safely as possible, (2) Gulf would be able to predict the cost of insurance with some certainty.

Viewed from the beginning of the project, costs under any plan affected by claims experience, whether prospective or retrospective, are unpredictable. Thus, we cannot agree that it is unreasonable to construe § 5.2 so as to exclude all claims experience modifications from reimbursable costs. Such construction results in the maximum certainty and predictability of Gulf's costs; costs or savings are incurred by the party with the only opportunity to reduce losses, namely Harrison Western. It also makes good sense to provide the party who is in direct, actual control of the work with this extra incentive to prevent accidents. If he has to pass all savings on to the owner, suddenly that incentive is not present. There is another thing, under either type of insurance plan, prospective or retrospective, premiums are affected by an employer's claims experience at all sites covered by a policy. Thus, under either type of plan, the cost of Harrison Western's coverage for the project at issue here would be affected by losses suffered at other Harrison Western jobs. It is not unreasonable to suppose that Gulf might not wish to be affected by claims at other Harrison Western job sites. Finally, an owner always is anxious to have a rate that is positive and not changeable. Thus, this is undoubtedly the main motive behind a clause such as § 5.2.

Therefore, the construction of the contract, which appears from the ordinary meaning of the terms used, does not result in an unreasonable construction. Where that is the situation, courts must give effect to the words used. It would be extremely difficult to construe this in the way that Gulf requests because of the plainness of the words and the lack of ambiguity in the work.

## V.

### DOES THE CONDUCT OF THE PARTIES REQUIRE REVERSAL OR REMAND FOR TRIAL?

The final argument that Gulf makes is that, because Harrison Western billed Gulf for actual insurance costs for three years, summary judgment ought to be entered in favor of Gulf. In the alternative, Gulf maintains that Harrison Western's conduct creates a genuine issue as to a material fact, necessitating remand for trial.

The general rule is that the conduct of the parties to a contract is to be examined only if the contract is ambiguous. *Brown v. American Bank of Commerce, supra; Shaeffer v. Kelton*, 95 N.M. 182, 619 P.2d

1226 (1980). In the present case, there is no ambiguity in the contract once the features of the various types of workmen's compensation insurance plans are known. Once those facts are known to the court, it can be determined that an experience modification is an "adjustment" under a "similar type" plan as a matter of law. Therefore, the conduct of the parties ought not to affect the result in the case.

As a practical matter, however, if the conduct of the parties clearly evinced an interpretation of the contract at odds with the ordinary meaning of the words, there would be an inclination to reexamine the question of ambiguity in that light. "Where the parties have accorded a practical construction to their contract by their conduct, . . . 'this construction will be given substantial weight in determining the proper interpretation, particularly if the conduct manifesting their construction occurred prior to any controversy.'" *Boswell v. Chapel*, 298 F.2d 502, 506 (10th Cir. 1961), quoting *Fanderlik-Locke Co. v. United States*, 285 F.2d 939, 947 (10th Cir. 1960), *cert. denied*, 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 823 (1961). *See also, Schultz & Lindsay Construction Co. v. State*, 83 N.M. 534, 494 P.2d 612 (1972).

Here, however, the conduct of the parties does not clearly demonstrate any particular construction of § 5.2. Prior to any controversy, the parties acted in accordance with both constructions of § 5.2. Thus, for three years, Harrison Western billed Gulf for actual insurance costs and Gulf paid those costs. That is, for three years the experience modifier was used in calculating Gulf's cost for insurance. Then, for a year and a half, the experience modifier was not used and Gulf paid the manual rate.

We are aware that literal language in a contract does not always prevail over the general and positive thrust of the entire contract. However, there is no basis for such approach in this case. The conduct of the parties in this case is not clear regarding the meaning of § 5.2. Under these circumstances, the unambiguous language of the contract controls. There is no dis-

pute as to any material fact, and Harrison Western is entitled to judgment in its favor.

Judgment of the district court should be and the same is hereby affirmed.